Patrick J. SAVIEO, Personal Representative of the Wrongful Death Estate of Jon A. Savieo, Deceased, Appellant–Plaintiff,

v.

The CITY OF NEW HAVEN, Appellee–Defendant.

No. 02A03–0407–CV–317.

Court of Appeals of Indiana.

April 7, 2005.

Dennis H. Geisleman, Dennis R. Brown, Law Office of Dennis H. Geisleman, Fort Wayne, IN, Attorneys for Appellant.

Stacy J. Vasilak, Bruce P. Clark & Associates Munster, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Patrick J. Savieo ("Patrick"), personal representative of the wrongful death estate of his father, Jon A. Savieo ("Jon"), appeals the trial court's grant of summary judgment in favor of the City of New Haven ("the City"). We affirm.

### Issue

The dispositive issue is whether the City is entitled to immunity for any breach of its duty to prevent Jon's suicide.

### Facts and Procedural History

The essential facts are undisputed. On July 1, 2002, Jon obtained a handgun from Patrick for the stated purpose of selling it. When Patrick's wife became concerned, Patrick phoned Jon, who threatened to shoot himself in the chest. Patrick immediately went to Jon's home, and his wife called the City police to report the suicide threat. Patrick and the two officers who responded to the call searched Jon's house for the handgun but could not find it. No one searched Jon or the chair in which he was sitting for a firearm. Lt. Herb Baatz, Jon's friend, also responded to the dispatch and dismissed the other officers. Jon claimed that he had sold the handgun to a friend and admitted that he had made the suicide threat to "get attention." Appellant's App. at 67. After discussing with Jon the issues that had prompted the threat and the possibility of seeking mental health treatment, Lt. Baatz requested that Patrick join him on the porch to discuss matters further. Shortly after Lt. Baatz and Patrick stepped outside, Jon fatally shot himself with the handgun.

On May 29, 2003, as personal representative of Jon's estate, Patrick filed a wrongful death claim against the City under the Indiana Tort Claims Act ("ITCA"),[1] alleging that Lt. Baatz, "while acting as an agent and employee of [the City], was negligent in his handling of [Jon's] threatened suicide attempt." *Id.* at 10. On March 9, 2004, the City filed a motion for summary judgment based, *inter alia*, on several theories of statutory immunity under the ITCA and contributory

1. Ind.Code ch. 34–13–3.

negligence. *See* Ind.Code § 34–51–2–2 (exempting governmental entities from Indiana Comparative Fault Act). Patrick filed a response, and the City filed a reply. On May 5, 2004, the City filed a motion to strike certain matters filed by Patrick.[2] On May 17, 2004, the trial court held a hearing on the City's motions and took matters under advisement. On June 16, 2004, the trial court entered the following order:

> The Court, having read the briefs, reviewed the designated evidentiary material and the case law now concludes that there remain no genuine issues of material fact in dispute between the parties and that the City of New Haven is entitled to Judgment as a matter of law.
>
> First, the Court concludes that the City of New Haven is entitled to immunity pursuant to the Indiana Tort Claims Act I.C. 34–13–3–3(8). Subsection 8 provides that: "The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations) . . ." In this cause of action, Officer Baatz could have placed Jon Savieo under an immediate detention pursuant to I.C. 12–26–4–1 which is titled "Authority of law enforcement officer to apprehend and charge individual." . . . .
>
> That Officer Baatz did not do so clearly falls under the provisions cited above of the Indiana Tort Claims Act and its immunity provision cited above.
>
> Moreover, this is not a case in which Jon Savieo was taken into custody. Unlike [*Sauders v. County of Steuben*, 693 N.E.2d 16 (Ind.1998) ], this is a matter in which Jon Savieo was contributorily negligent which, again, causes the De-

fendant to not be liable under the Indiana Tort Claims Act.

> WHEREFORE, the Court now GRANTS the Defendant's Motion for Summary Judgment and dismisses this cause of action.

Appellant's App. at 7.[3] Patrick now appeals.

## Discussion and Decision

Our standard of review is well settled:

> Summary judgment is appropriate only if the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Upon appeal, we apply the same standard as the trial court and resolve disputed facts or inferences in favor of the non-moving party. This court and the trial court are bound to consider only those matters which were designated to the trial court. The moving party bears the burden of establishing, prima facie, that no genuine issues of material fact exist and that he or she is entitled to judgment as a matter of law. In addition, the party appealing a grant of summary judgment bears the burden of persuading us that the trial court erred.
>
> . . . . The trial court's findings and conclusions are not binding upon this court, but do facilitate appellate review and offer insight into the trial court's rationale for its decision. On review, we will affirm the summary judgment if it is sustainable upon any theory or basis found in the record.

---

**2.** The City's motion to strike is not in the record before us.

**3.** The trial court did not specifically rule on the City's motion to strike. In its appellate brief, however, the City mistakenly contends that the opinions of Patrick and his expert in their respective affidavits "were the subject of a Motion to Strike . . . and are inadmissible and cannot be considered by the court." Appellee's Br. at 23 n. 2.

*Unincorporated Operating Div. of Ind. Newspapers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 900 (Ind.Ct.App.2003) (some citations omitted), *trans. denied.*

 Here, the trial court concluded that the City was entitled to immunity pursuant to Indiana Code Section 34–13–3–3(8) of the ITCA, which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: ... [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Our supreme court has explained that the ITCA

> allows suits against governmental entities for torts committed by their employees but grants immunity under the specific circumstances enumerated in Indiana Code section 34–13–3–3. Whether a governmental entity is immune from liability under the ITCA is a question of law for the court to decide. Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity. The party seeking immunity bears the burden of establishing that its conduct comes within the ITCA.

*Mangold ex rel. Mangold v. Dep't of Natural Res.*, 756 N.E.2d 970, 975 (Ind.2001) (citations omitted). "Immunity assumes negligence but denies liability. The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind.2003) (citations and quotation marks omitted). We review claims of governmental immunity de novo.

*Miller v. City of Anderson*, 777 N.E.2d 1100, 1103 (Ind.Ct.App.2002), *trans. denied* (2003). "We owe the trial court no deference, and we will substitute our judgment for that of the trial court if necessary." *Id.*

 For purposes of Indiana Code Section 34–13–3–3(8), "enforcement" has been defined as "those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Miller*, 777 N.E.2d at 1104. Patrick observes that "[w]hile suicide or attempted suicide is not an act to be met with social approval, the fact is that it is not a criminal act in the State of Indiana." Appellant's Br. at 10. While this observation is true as far as it goes, it is far from dispositive here.

 The trial court found that Lt. Baatz could have detained Jon pursuant to Indiana Code Section 12–26–4–1, which provides:

> A law enforcement officer, having reasonable grounds to believe that an individual is mentally ill, dangerous, and in immediate need of hospitalization and treatment, may do the following:
>
> (1) Apprehend and transport the individual to the nearest appropriate facility. The individual may not be transported to a state institution.
>
> (2) Charge the individual with an offense if applicable.

The decision to take Jon into custody pursuant to Indiana Code Section 12–26–4–1 presumably would have resulted in his being searched and restrained. To the extent that Patrick's negligence claim is premised on Lt. Baatz's failure to apprehend Jon to prevent him from committing suicide, we agree with the trial court's conclusion that the City is entitled to im-

munity under Indiana Code Section 34–13–3–3(8). Granted, Indiana Code Section 12–26–4–1 does not criminalize conduct and thus cannot be "enforced" in the same sense as a statute outlawing murder, for example, but it does grant a law enforcement officer the discretion to compel another's obedience to the police powers of the state as defined by its laws and constitution, regardless of whether the person is suspected of committing a crime. The exercise of this discretion is the very essence of law enforcement; accordingly, we hold that police officers and their governmental employers are entitled to immunity if a loss results from the decision to apprehend (or not to apprehend) a mentally ill and dangerous person "in immediate need of hospitalization and treatment" pursuant to Indiana Code Section 12–26–4–1.

■ To the extent that Patrick's negligence claim is based on other grounds relating to Lt. Baatz's alleged acts or omissions in handling Jon's suicide threat, we must continue our immunity analysis. In its motion for summary judgment, the City also claimed that it was immune for the "[t]he performance of a discretionary function" under Indiana Code Section 34–13–3–3(7). We disagree. In *Peavler v. Board of Commissioners of Monroe County*, 528 N.E.2d 40 (Ind.1988), our supreme court developed the "planning/operational" test for determining whether a particular function is discretionary. The court subsequently explained that through this test, "we distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity." *Greathouse v. Armstrong*, 616 N.E.2d 364, 366–67 (Ind.1993).[4] Here, Lt. Baatz was engaged in the execution or implementation of policy; consequently, the City is not entitled to discretionary function immunity.

■ The City also claimed immunity under Indiana Code Section 34–13–3–3(10), which precludes liability for "[t]he act or omission of anyone other than the governmental entity or the governmental entity's employee." Patrick correctly observes that such immunity applies only where a plaintiff seeks to impose vicarious liability for the conduct of third parties "other than government employees acting within the scope of their employment." *Mangold*, 756 N.E.2d at 976. That is not the case here.

■ Based upon the designated evidence, we conclude that the City is not entitled to immunity under any other ground enumerated in Indiana Code Section 34–13–3–3, aside from Section 3(8) as mentioned above. We note, however, that the scope of governmental immunity is not limited solely to those statutory grounds. In *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), our supreme court observed,

> [W]hile older common law principles immunized governmental units from tort liability, that immunity was abrogated in a series of decisions beginning in the middle of this century. The last of these decisions was *Campbell v. State*, 259 Ind. 55, 284 N.E.2d 733 (1972). In *Campbell*, this Court reflected on the

---

4. In view of the planning/operational test adopted in *Peavler*, we conclude that our holding in *Crouch v. Hall*, 406 N.E.2d 303 (Ind.Ct.App.1980), *trans. denied*, on which the City relies, is no longer good law. *See id.* at 304 (holding that investigation of rape was discretionary function and therefore entitled to immunity). As the *Peavler* court stated, "If discretionary functions included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would fall within the exception." *Peavler*, 528 N.E.2d at 43.

difficulties in distinguishing between "governmental functions" and "proprietary functions" and concluded that establishing categories of governmental immunity was best left to the legislature. We therefore abrogated the common law doctrine of sovereign immunity in *almost* all respects. The breadth of its language eliminating sovereign immunity made clear that after *Campbell,* the tort liability of a governmental unit would be exactly the same as a private defendant in *almost* all respects.

But the word "almost" in the preceding two sentences is important. *Campbell* did acknowledge "that some vestige of the governmental immunity must be retained." *Id.* at 62–63, 284 N.E.2d at 737 (*quoting* W. Prosser, *Law of Torts* § 131, at 986 (4th ed.1971)). *Campbell* identified three situations where governmental units would not be liable for "acts or omissions which might cause damage to persons": (1) where a city or state fails to provide adequate police protection to prevent crime, *id.* (citing *Simpson's Food Fair, Inc. v. City of Evansville,* 149 Ind.App. 387, 272 N.E.2d 871 (1971), *transfer denied*); (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment; and (3) where judicial decision-making is challenged, *id.* (citing *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

*Id.* at 227 (footnotes omitted).

The *Benton* court stated that these common law exceptions to the general rule of governmental liability remain viable today:

We hold that *Campbell* is properly applied by presuming that a governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions) that it should be treated as one as well. We refuse to articulate a one-size-fits-all test for determining when a duty is so closely akin to one of the limited exceptions that it should be treated as one as well. As we have seen, the "governmental function-propriety function" test did not work. Neither has the public duty-private duty test. The best we can say as a general proposition is that because the duty of care is so pervasive, any additional exceptions will be rare and identified on a case-by-case basis.

*Id.* at 230 (footnote omitted).

Since *Benton,* our court has identified several such exceptions. *See, e.g., City of Hammond v. Cipich ex rel. Skowronek,* 788 N.E.2d 1273, 1283 (Ind.Ct.App.2003) (holding that city was immune for "failure to provide adequate rescue services necessary to aid those in emergency situations[,]" where motorist intentionally drove vehicle into Lake Michigan), *trans. denied; O'Connell v. Town of Schererville of Lake County,* 779 N.E.2d 16, 21 (Ind.Ct.App. 2002) (holding that city was immune for failure to maintain adequate water supply for fire protection); *Gates v. Town of Chandler,* 725 N.E.2d 117, 120 (Ind.Ct. App.2000) (same), *opinion on reh'g, trans. denied.* To the extent that the police are expected to prevent threatened suicides in noncustodial cases, we conclude that this duty is so closely akin to the duty to prevent crime that it should be treated as fitting within that limited exception to the general rule of governmental liability. *See Fair v. State,* 627 N.E.2d 427, 431 (Ind. 1993) (recognizing that "police are expected not only to enforce the criminal laws but also to aid those in distress, abate

hazards, prevent potential hazards from materializing, and perform an infinite variety of other tasks calculated to enhance and maintain the safety of communities"). We therefore hold that the City is entitled to immunity for Lt. Baatz's failure to prevent Jon's suicide. Accordingly, we affirm the trial court's grant of summary judgment in favor of the City.[5]

Affirmed.

RILEY, J., and VAIDIK, J., concur.

---

5. Because we decide this case on immunity grounds, we need not specifically address the trial court's conclusion that Jon was contributorily negligent.