Mark HARNESS, Jr., Appellant–
Plaintiff,

v.

Paul SCHMITT and Town of Winona Lake, Appellees–Defendants.

No. 43A05–0909–CV–528.

Court of Appeals of Indiana.

March 25, 2010.

---

**164**

David C. Kolbe, Warsaw, IN, Attorney for Appellant.

Andrew L. Teel, Mark D. Ulmschneider, William A. Ramsey, Steele, Ulmschneider & Malloy, L.L.P., Fort Wayne, IN, Attorneys for Appellees.

## OPINION

MAY, Judge.

Mark Harness Jr. sued the Town of Winona Lake and one of its police officers, Paul Schmitt, (collectively, "Schmitt"), alleging Schmitt unlawfully assisted in a false eviction. The trial court granted summary judgment for Schmitt, apparently on the ground Schmitt was engaged in law enforcement and did not do anything illegal.[1] We affirm.

---

1. In the summary judgment motion Schmitt alleged tort immunity and that Harness had been fully compensated for his losses. In its decision, the trial court did not explicitly address either of those grounds. Instead, it noted Schmitt did not enter the residence during the eviction or "tote any of the personal property from" the residence, (App. at 6), and was there "to prevent any breach of place [sic], that is enforcement of law." (*Id.*) In his appellate brief Harness asserts only that Schmitt was negligent in assisting in the execution of an illegal eviction order.

App. R. 46(B)(2) provides the argument in the appellee's brief "shall address the contentions raised in the appellant's argument." In his brief, Schmitt's counsel addresses, over a span of nearly seven pages, two "contentions" Harness never raised in his brief. Schmitt first attributes to Harness what Schmitt refers to as "the so-called intimidation claim," then argues Harness waived that claim. Schmitt's counsel notes Harness "never amended his complaint to add such a claim," and Harness "knew the identity of the officer, but has never named him as a Defendant in this case." (Appellees' Response Br. at 23.) We decline Schmitt's invitation to find fault with a litigant who does not address on appeal a claim he never made in the trial court against a party who was never named, and we invite Schmitt's counsel to review our rules regarding the appropriate content of an appellee's brief.

Schmitt's counsel also devotes substantial argument to the premise Harness was fully compensated for any alleged losses. We appreciate that Schmitt is presumably offering this argument as an alternative ground for affirming the trial court, but note Harness did not make that allegation of error in his brief. After Schmitt raised the issue for the first time, Harness responded to it in his reply brief, which Schmitt then moved to strike on the ground it "contains impermissible argument which was not contained in his Appellant's Brief." (Appellees' Motion to Strike at 1.) In an order issued simultaneously with this opinion, we deny the Motion to Strike.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the non-moving party, Harness, are that Harness was buying a house on contract from Hunter Carlile. On January 12, 2007 Carlile went to the police station and asked that an officer accompany him to the property Harness was buying while Carlile served an eviction notice and changed the locks. Carlile did not have a court order that would permit the eviction.

When Carlile and Schmitt arrived at the residence, Harness was not present but another resident, Daniel Linton, was. When Linton questioned the eviction, he saw Schmitt place his hand on his gun. This caused Linton to feel threatened "such that the unlawful eviction was performed without resistance or challenge."[2] (Appellant's App. at 11.)

Linton and Carlile both removed property from the house and Carlile changed the locks. Harness learned of the eviction and went to the police station to file a report. There he was told by an assistant town marshal that if he filed a police report he would be arrested on an outstanding warrant. Harness filed the report and was taken into custody.

## DISCUSSION AND DECISION

The standard of review of a summary judgment is the same as that used in the trial court: summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lean v. Reed*, 876 N.E.2d 1104, 1107 (Ind. 2007). In determining whether summary judgment is appropriate, we construe all facts and reasonable inferences in favor of the nonmoving party. *Jackson v. Scheible*,

902 N.E.2d 807, 809 (Ind.2009). Our review is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). We must carefully review a decision on summary judgment to ensure a party is not improperly denied its day in court. *Id.* at 974. We affirm summary judgment on any legal basis supported by the designated evidence. *Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915, 922 (Ind.Ct.App.2007). The appellant bears the burden of persuading us summary judgment was erroneous. *Id.*

### 1. *Immunity*

Ind.Code § 34–13–3–3 provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from

\* \* \* \* \* \*

(8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

In determining whether Indiana Code § 34–13–3–3(8) provides immunity for a police officer, we first determine whether the officer was acting within the scope of his or her employment when the injury to a plaintiff occurred and, second, whether the officer was engaged in the enforcement of a law at that time. *City of Anderson v. Davis*, 743 N.E.2d 359, 364 (Ind.Ct.App.2001), *trans. denied.* We hold that Schmitt was acting within the scope of his employment and engaged in law enforcement when he accompanied Carlile to Harness's house.

---

2. Linton made that statement in an affidavit. Harness was not present during the eviction, but offered a description of the event in his deposition, where he purported to describe in more detail Linton's interaction with Carlile and Schmitt.

We note initially that it is not apparent from the record before us whether or why the eviction notice was "false," or even that there was an "eviction" as contemplated by any statutes requiring an "eviction notice." In his complaint Harness described himself as a "contract purchaser" of the house to which Schmitt accompanied Carlile. The record does not include the purported false notice, but there is evidence Harness was not in default to such an extent Carlile was entitled to eject him.

■ Even assuming for purposes of argument there was a wrongful eviction and Schmitt's involvement in it was negligent, he could still be immune from liability. In *Davis*, Davis contended the City's use of a police dog was not law enforcement because the City used the dog despite knowing it had inappropriately attacked people in the past. We noted there appeared to be no authority suggesting that when a police officer performs his duties in a negligent manner, the officer is no longer "enforcing a law":

> To exempt negligent acts from immunity under the Act, the explicit purpose of which is to shield government entities from liability for losses resulting from the performance of various governmental functions, would render the act largely meaningless. It is, after all, the *Tort Claims Act*. Indeed, police officers may be immune when their conduct is intentionally tortious, *see City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct.App.1999), *trans. denied* (holding that police officers were immune from liability for damages resulting from alleged intentional infliction of emotional distress), and even when it is "egregious" and apparently contrary to law. *Minks* [*v. Pina*, 709 N.E.2d 379, 382–383 (Ind. Ct.App.1999), *trans. denied*] (holding that police officers who instructed an intoxicated and unlicensed teenager,

who was a passenger in a vehicle operated by his intoxicated relative, to drive the vehicle home rather than go through the effort of preparing arrest paperwork for the two intoxicated subjects, were immune from liability for damages resulting from deaths of two innocent motorists, and injuries to another, caused by the drunk driving relative).

743 N.E.2d at 365. Therefore, a police officer's performance of his duties in an otherwise illegal manner does not necessarily take those activities outside the scope of his employment or beyond the realm of law enforcement. *Id.* at 365 n. 4.

■ We cannot say Schmitt was acting outside the scope of his duties when he agreed to accompany Carlile to Harness's house. "An employee's scope of employment consists of activities involving the pursuit of the governmental entity's purpose." *King v. Northeast Security*, 790 N.E.2d 474, 483 (Ind.2003), *reh'g denied*. This includes "conduct ... of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind.2000) (quoting Restatement (Second) Agency § 229 (1958)). Police departments are required, among other things, to preserve the peace, prevent offenses, guard public health, and enforce laws. Ind.Code § 36–8–3–10(a)(1), (2), (7), (14). "[P]olice are expected not only to enforce the criminal laws but also to aid those in distress, abate hazards from materializing, and perform an infinite variety of other tasks calculated to enhance and maintain the safety of communities." *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993).

In *Nieto v. State*, 499 N.E.2d 280 (Ind. Ct.App.1986), we noted:

> IC 36–8–3–6(c)(4) (1982) provides that "[t]he police officers of a municipality shall ... suppress all breaches of the

peace within their knowledge...." [W]hen a police officer, whether in uniform or not, takes it upon himself to enforce the law in order to maintain peace and order for the benefit of the public, the officer is performing official duties as a police officer.

*Id.* at 282 (citations omitted). We decline to hold suppression of a breach of the peace is outside the scope of a police officer's duties.[3]

Harness next argues Schmitt cannot assert immunity because he was not enforcing any law: "The actions of Hunter Carlisle [sic] were based upon a false 'eviction notice.' The creation and execution of an 'eviction notice' carries with it no lawful authority." (Br. of Appellant at 7.) We cannot find summary judgment erroneous on that ground because the execution of the eviction notice was not the "law enforcement" in which Schmitt was engaged.

The trial court found the officer was "present at [Harness's] residence to prevent any breach of place[4] [sic], that is enforcement of law." (Appellant's App. at 6.) Schmitt so testified in his affidavit: he was "present for the legitimate law purpose of maintaining the peace" and but for Carlile's request that he be "present during the eviction process to maintain the peace, [Schmitt] would not have gone upon" the Harness property. (Appellees' App. at 89.) Harness, in his deposition, agreed. He was asked, "And [Schmitt] was there essentially to keep the peace, would that be fair?" Harness replied, "Keep the peace or protect [Carlile], yeah, in case someone—you know, one of us—came over there angry or something." Harness agreed Schmitt was at the house "just to avoid an altercation, a physical altercation." (*Id.* at 25.)

We decline to hold an officer's presence at a place where a breach of the peace might be anticipated is, as a matter of law, outside the definition of "law enforcement." In *Davis*, we noted "law enforcement" includes "activit[y] in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof," and therefore was "enforcement of a law" within the meaning of the tort claims act. 743 N.E.2d at 365.

The tort claims act "does not contain a restriction which requires that a law enforcement officer arrest someone before the officer's actions fall within the immunity provisions" of the act. *Daggett v. Indiana State Police*, 812 N.E.2d 1151,

---

**3.** Harness does not address that basis for statutory immunity or the exceptions to it.

The only stated exceptions to the statutory immunity for acts of law enforcement are false arrest or false imprisonment, and our Supreme Court has recognized an additional exception for use of excessive force. *Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993). But the scope of governmental immunity is not limited to statutory grounds listed in the tort claims act. In *Benton v. City of Oakland City*, 721 N.E.2d 224 (Ind.1999), our Supreme Court observed the common law doctrine of sovereign immunity had been abrogated in *almost* all respects, and we noted in *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1277 (Ind.Ct.App.2005), *trans. denied:*

Since *Benton*, our court has identified several such exceptions. *See, e.g.,* ... *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993) (recognizing that "police are expected not only to enforce the criminal laws but also to aid those in distress, abate hazards, prevent potential hazards from materializing, and perform an infinite variety of other tasks calculated to enhance and maintain the safety of communities").

*Id.* at 1277–78. In *Savieo*, we held the City had immunity for a police officer's failure to prevent a suicide. *Id.* at 1278.

**4.** We presume, as do the parties, that the trial court meant breach of peace.

1153 (Ind.Ct.App.2004). There we held actions by law enforcement officers who assist emergency medical professionals in restraining combative individuals who need medical treatment are within the scope of the "enforcement" provision of the tort claims act. *Id.*

> [W]hen law enforcement officers respond to a request to assist in restraining combative patients, the officers are enforcing the law to the extent that they are preventing the patient from injuring himself and/or the medical professionals. As a consequence, they receive the protections of the "enforcement" immunity found in the ITCA. Holding otherwise would likely prevent the officers from performing a routine part of their job.

*Id.* at 1153–54.

While we express no opinion on the wrongfulness *vel non* of Carlile's actions and Schmitt's participation, we note it is a "routine part" of a police officer's job to accompany private individuals in situations where there is a concern that a breach of the peace might arise. *See, e.g., Daurer v. Mallon,* 597 N.E.2d 334, 337 (Ind.Ct.App. 1992) (police department dispatched an officer to Daurer's home "to preserve the peace and protect Sue Mallon, Daurer's ex-live-in-girlfriend, from injury while she removed a television set").

The trial court did not err in finding Schmitt immune from tort liability.

### 2. *Attorney Fees*

 Schmitt argues he is entitled to attorney fees under Ind. Appellate Rule 66.[5] He is not. We will assess appellate damages only against an appellant who in bad faith maintains a wholly frivolous appeal. *Wallace v. Rosen,* 765 N.E.2d 192, 201 (Ind.Ct.App.2002). Harness's is not such an appeal. We use extreme restraint when exercising our discretionary power to award damages on appeal because of the potential chilling effect on the exercise of the right to appeal. *Indiana CPA Society, Inc. v. GoMembers, Inc.,* 777 N.E.2d 747, 753 (Ind.Ct.App.2002). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.*

 Bad faith on appeal may be "substantive" or "procedural," *Manous v. Manousogianakis,* 824 N.E.2d 756, 768 (Ind. Ct.App.2005), and Schmitt accuses Harness of both. Substantive bad faith implies conscious wrongdoing because of "dishonest purpose or moral obliquity." *Wallace,* 765 N.E.2d at 201. There is procedural bad faith when a party flagrantly disregards the form and content requirements of our rules, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court.[6] *Manous,* 824 N.E.2d at 768. Harness's appeal has sufficient merit and is in sufficient compliance with the Appellate Rules that an award of appellate attorney's fees would be inappropriate.

---

**5.** App. R. 66(E) provides we "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution."

**6.** As explained above in note 1, it is Schmitt's counsel who has, by attributing to Harness arguments he did not make on appeal, and then addressing those arguments at length, filed a brief "appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Ind. CPA Soc'y, Inc. v. GoMembers, Inc.,* 777 N.E.2d 747, 753 (Ind.Ct.App.2002).

To show procedural bad faith, Schmitt points to a number of shortcomings in Harness's brief, including deficiencies in the appendix, statement of facts, statement of the case and some formatting issues that Schmitt's counsel correctly characterizes as "trivial." (Appellants' Response Br. at 33 n. 11.) We do not find these flaws to be so flagrant or significant as to taint the appeal as vexatious and we decline to find procedural bad faith that would warrant the imposition of attorneys fees.[7]

 To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and argument are utterly devoid of all plausibility. *Manous*, 824 N.E.2d at 768. There is designated evidence suggesting Schmitt assisted in a wrongful eviction; while we hold against Harness on immunity grounds, we cannot say Harness's claim is inconsistent with "reasonable advocacy grounded in established legal principles" or "utterly devoid of all plausibility." *See GoMembers*, 777 N.E.2d at 753.

We affirm the trial court.

Affirmed.

DARDEN, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

While it may not be improper *per se* for an armed and uniformed police officer to accompany a private party to the scene of self-help eviction or repossession, such a practice is fraught with the potential for abuse. It creates the false impression that the eviction or repossession is being effected pursuant to court authority although the officer has no way of knowing whether the eviction or repossession is lawful or unlawful. When, as here, a police officer puts his hand on his gun when the eviction is questioned by one who is rightfully upon the property, it heightens that false impression.

I think there are material questions of fact whether the police officer here was assisting in an unlawful eviction, and I would reverse the grant of summary judgment and remand for trial.

---

7. Both briefs were deficient in some respects. Schmitt's Statement of Facts included argument, which is inappropriate in that part of an appellate brief. *County Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 289 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 219 (Ind.2000). It includes lengthy recitations of evidence apparently unrelated to any allegations of error Harness made on appeal, and is in large part the kind of "transparent attempt to discredit [appellant's] argument" that we disapproved in *County Line Towing*, rather than "a vehicle for informing this court." *Id.*