

FILED

Nov 26 2019, 6:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

A. Richard M. Blaiklock
Ryan J. Vershay
Derek G. Raymond
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Janette E. Surrisi
James N. Clevenger
Wyland, Humphrey, Clevenger &
Surrisi, LLP
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scotty VanHawk and The 27 Group, Inc., *Appellants-Defendants,* v. Town of Culver, Indiana and Culver Building Commissioner, *Appellees-Plaintiffs,* | November 26, 2019 Court of Appeals Case No. 19A-CC-408 Appeal from the Marshall Circuit Court The Honorable Curtis D. Palmer, Judge Trial Court Cause No. 50C01-1808-CC-381 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following an inspection, the Town of Culver's ("Culver") Building Commissioner sought to designate a building located at 415 Lakeshore Drive, Culver, Indiana (the "Property"), an unsafe building pursuant to Culver's Unsafe Building Ordinance ("UBO"). The 27 Group, Inc., a dissolved corporation, owned the Property. Scotty VanHawk was the corporation's officer and Katie Delacruz was the corporation's registered agent. No action was taken to repair the Property. The Marshall County Unsafe Building Committee convened and determined the Property was an unsafe building and ordered it to be demolished. Three weeks later, Culver filed a Complaint to Public Nuisance and Unsafe Building and Request for Preliminary Relief, as well as an Application for an Injunction, with the trial court. Following a hearing on Culver's complaint and application for injunction, the trial court issued an order determining the Property was a public nuisance and an unsafe building and ordering it to be demolished. The 27 Group, Inc. appeals and raises numerous issues which we consolidate and restate as: (1) whether the trial court's demolition order was clearly erroneous; and (2) whether Culver should be awarded appellate attorney fees. We conclude the trial court's demolition order was not clearly erroneous under a common law public nuisance theory and decline to award Culver appellate damages. Accordingly, we affirm.

# Facts and Procedural History[1]

After Culver received a report that there was a "broken door wide open" on the Property, it notified Chuck Dewitt, the town's Building Commissioner.[2] Transcript, Volume II at 10. On June 27, 2018, Dewitt inspected the Property "to make sure that no one was there . . . and no one was injured at that time." *Id*. Dewitt took numerous photos of the condition of the Property and then contacted The 27 Group,[3] who subsequently boarded up the door. Culver had previously adopted Ordinance 2015.007, which included Indiana Code sections 36-7-9-1 through -28, which govern unsafe buildings. Pursuant to this authority, Dewitt took steps to designate the Property an unsafe building. On July 24, 2018, the Marshall County Unsafe Building Committee (hereafter "Hearing Authority"), of which Dewitt is a member, convened to determine the status of the Property. The Hearing Authority determined that The 27 Group, Inc. owned the Property, with Scotty VanHawk being an officer and Katie Delacruz the resident agent of the corporation. However, The 27 Group, Inc. had been administratively dissolved prior to the Hearing Authority's meeting.[4]

---

[1] We held oral argument on this case on October 28, 2019, at the Indiana Historical Society in Indianapolis, Indiana. We thank the Indianapolis Scientech Club for hosting this oral argument, the Indianapolis Historical Society for their efforts in coordinating this event, and counsel for their advocacy.

[2] Dewitt also serves as the Building Commissioner for Marshall County and the Town of Argos.

[3] It is unclear how Dewitt contacted The 27 Group, Inc.

[4] Throughout its brief, Culver collectively refers to The 27 Group, Inc., Scotty VanHawk, and Katie Delacruz as "VanHawk." Because the corporation owns the Property at issue in this case and, as discussed in Section II.A., Culver concedes that this is an in rem action and has not attempted to pierce the corporate veil or

[3]     The Hearing Authority determined that the Property was unsafe and needed to be demolished.[5]  At some point, notice was sent to The 27 Group, Inc. to repair the Property; however, no action was taken.  On August 15, 2018, following the Hearing Authority's determination, Culver filed in the trial court its Complaint to Public Nuisance and Unsafe Building and Request for Preliminary Relief against The 27 Group, Inc.  Culver alleged that the Property was unsafe and a public nuisance:

> 6.      [Culver] and the [Hearing Authority] met on July 24, 2018 and made a determination under Indiana Code 36-7-9-5, that the property at 415 Lakeshore Drive, Culver[,] Indiana 46511, is an unsafe building and a public nuisance.
>
> 7.      The Subject Property is unsafe for the following reasons:
>
>> a.      The structure on the Subject Property is unoccupied and has been unoccupied for years.  It has broken windows, unlocked doors, holes at various locations, all of which allow children and pests to enter the structure.  Ceiling tiles have fallen and are hanging.
>>
>> b.      Constitutes a fire hazard.

---

sought a personal judgment against Mr. VanHawk, we will refer to the appellant as The 27 Group, Inc. or "the Corporation."  Similarly, where applicable, Mr. VanHawk refers to Scotty VanHawk alone.

[5] In its order, the trial court did not enter a finding as to what the Hearing Authority specifically ordered; however, Dewitt testified that the Hearing Authority recommended demolition of the unsafe building.

c.      Hazardous to public health in that the interior is full of mold.  An odor emits from the structure.

d.      Unfit for human habitation with mold, excessive trash and no utilities.

e.      A public nuisance located in the middle of a residential area.

8.      [Culver] has sent certified letters to [The 27 Group, Inc.] that the Subject Property constitutes an Unsafe Building.

9.      [The 27 Group, Inc.] ha[s] not remedied the conditions of the Subject Property.

10.     The condition of the Subject Property continues to deteriorate and as such is a public nuisance and a hazard to the public, unsafe building and/or unsafe premise.  [The 27 Group, Inc.] has failed to:  repair, rehabilitate, demolish, or remove the portions of the Subject Property so as to bring the property into compliance with Town and State rules and regulations and to eliminate the nuisance thereon.

11.     The Subject Property has a negative effect on the property values and the quality of life in the surrounding area.

12.     Marshall County Ordinance 2015-12, Indiana Code 36-7-9, and Culver Town Ordinance 2015-17 provide the authority to the Court to enter a continuous enforcement order so as to require the Subject Property be remediated at owner's expense.

13.     [Culver] and, in particular, Town citizens and neighbors in [Culver], will continue to suffer immediate and irreparable harm unless the Court issues an Order to allow [Culver] to demolish

> the [S]ubject [P]roperty and order [The 27 Group, Inc.] to pay
> the cost incurred by [Culver] for said demolition.

Appendix to Appellants' Brief, Volume II at 12-13. Culver requested that the trial court order The 27 Group, Inc. to repair the Property or issue an order authorizing Culver to demolish it, and order The 27 Group, Inc. to pay a civil penalty and reasonable attorney fees. The same day, Culver also filed an Application for Injunction, in which it requested that the trial court hold a hearing and issue an injunction ordering the Corporation to repair the Property. In its motion, Culver asserted that the Property was determined to be unsafe by the Hearing Authority pursuant to Indiana Code section 36-7-9-5. Service of the complaint and summons was made on the three defendants by publication and Mr. VanHawk was also personally served.

[4] On December 18, 2018, the trial court held a hearing on Culver's Motion for a Preliminary Injunction. Mr. VanHawk appeared and notified the trial court that he suffers from a hearing disability and was unable to hear the proceedings. The trial court continued the hearing to allow Mr. VanHawk time to obtain counsel and for the court to arrange real time transcription service. The trial court asked Mr. VanHawk if he understood that the case involved the condition of the 415 Lakeshore Drive property to which Mr. VanHawk responded, "I do now." Tr., Vol. I at 5.

[5] One month later, the trial court held the continued hearing and provided real time transcription for Mr. VanHawk. At the outset of the hearing, Mr. VanHawk informed the trial court that he had not hired an attorney. Instead,

he explained that he had been unaware of the subject of the previous hearing. He stated,

> When you gave the information to me and I see what it's about, I have no connection.  I . . . would like a motion to dismiss, there is no reason to tie me to this entire ordeal. . . . I've never owned property in Culver, I don't own property in Culver, yet I've been drug into this, numerous times.

Tr., Vol. II at 4-5.  The trial court responded, "If you feel you have no connection to this case[,] you are not required to stay here today, you may leave if that's your preference."  *Id*. at 5.  After realizing the case would not be dismissed, Mr. VanHawk indicated he "absolutely [did] need time [to obtain] legal representation."  *Id*. at 6.  The trial court denied Mr. VanHawk's request for additional delay to obtain representation, explaining that it "gave [Mr. VanHawk] time to get representation at the last hearing and that has not happened[.]"  *Id*. at 8.  The trial court then stated, "[Counsel for Culver], you may go ahead, Mr. VanHawk is free to stay if he wishes or leave if he wishes."  *Id*.  The record reveals that Mr. VanHawk then exited the courtroom.[6]

[6] Culver called its first witness and the hearing proceeded without Mr. VanHawk. Culver offered sixty-five photos that Dewitt took during his inspection to demonstrate the condition of the Property and 2009 through 2017 tax

---

[6] "[F]or the record, Mr. VanHawk has exited the Courtroom and I presume exited the building."  *Id*. at 9. The trial court stopped the real time transcription and stated that if Mr. VanHawk returned and requested an official transcript of the hearing, the court reporter would provide him with a copy.

assessments and payments on the Property, all of which were admitted.[7] However, the Hearing Authority's determination was not offered or entered into evidence at the hearing. Dewitt testified that the process "involve[d] going before the [Hearing Authority], presenting the case there and getting a reading and ruling back from them." *Id.* at 11. He further testified that the Hearing Authority met on July 24, 2018, and determined the Property was "definitely unsafe and we needed to proceed with tearing the building down." *Id.* Specifically, he stated that the Hearing Authority determined it was unsafe "because of the deteriorated condition of the building . . . the roof coming apart falling in. The outside coming apart, it's open to animals . . . cats, raccoons, . . . there are bats and that sort of thing that are in and around there all the time." *Id.* at 12. He also stated the building was a fire hazard and filled with mold.

[7] When asked what Culver would like to happen, Jonathan Leist, Culver's Town Manager, testified: "[W]e'd like to see the findings of the [Hearing Authority] upheld, and we've asked for demolition . . . on the property. Give the property owner an opportunity to demolish it, and if he won't then we would move in and do it ourselves." *Id.* at 49. At the conclusion of the hearing, the trial court determined that the Property was a public nuisance and an unsafe building, granted judgment in favor of Culver, and ordered The 27 Group, Inc. to

---

[7] Although the photos included a stamped date of June 27 and November 27, 2019, Dewitt testified that he took the photos on June 27 and November 27, 2018, not 2019. He testified that his camera had the wrong date. *See id.* at 15.

demolish the building. The trial court subsequently issued a written order, finding in relevant part:

3. [Culver] determined that the deeded owner of [the Property] was The 27 Group, Inc. Said Subject Property was alleged to be a public nuisance and an unsafe building and was reviewed by the [Hearing Authority] on July 24, 2018. Said committee made a determination at its meeting that under I.C. 36-7-9-5 and the Town ordinance that the Subject Property was an unsafe building and a public nuisance. Notice was sent to [The 27 Group, Inc.] to repair the Subject Property.

4. The Subject Property was not repaired. There was no action taken by [The 27 Group, Inc.] to bring the Subject Property into compliance.

5. Thereafter, service of process was issued to the registered agent of the corporation but was returned by the Sheriff of Kosciusko County that the resident agent did not reside at the address. Service of process thereafter issued on all three (3) Defendants by publication in accordance with the Indiana Trial Rules and Summons was posted at the structure at 415 Lakeshore Drive, Culver, Indiana premises. Further, Scotty VanHawk was personally served summons on September 28, 2018.

6. Evidence was presented concerning the condition of the Subject Property which included as follows:

a. The structure at 415 Lakeshore Drive has been unoccupied for over four (4) years.

b.      The roof has numerous holes causing significant leaking of water into the interior of the building.  The roofing substance is delaminating.

c.      There are numerous holes in the walls.

d.      The structure has broken windows.

e.      Doors and windows are not securely covered.

f.      There was evidence of vandals and pests entering the structure.  Animal feces was found in the building.

g.      The foundation of the structure is cracked and crumbling so as to put at risk that portions of the building could collapse.

h.      Interior ceiling has fallen in.  Trusses are shown to be compromised.

i.      There is evidence of significant water damage to the interior of the building.  White and black mold is prevalent throughout the interior walls.

j.      The structure emits an offensive odor.

7.      The Subject Property has a negative effect on property values and the quality of life to the surrounding neighbors and to many Culver citizens who pass by the Subject Property which is located on the main street connecting the public park to the main commercial area of the Town.

8. The building on the Subject Property is unrepairable and cannot be brought into compliance with the Unsafe Building Law. The only remedy is demolition.

9. [T]he structure . . . is an unsafe building due to its impaired structure, a fire hazard, hazard to public health, public nuisance, vacant and blighted and maintained in such a [manner] that it is unfit for human habitation.

Appealed Order at 2-3. The trial court specifically stated that, if The 27 Group, Inc. fails to demolish the building, Culver may demolish the building and recoup expenses from the Corporation. The 27 Group, Inc. now appeals.

# Discussion and Decision

## I. Standard of Review

Where, as here, issues are tried upon the facts by the trial court without a jury, and the trial court enters specific findings sua sponte, we apply a two-tiered standard and determine whether the evidence supports the findings, and then whether the findings support the judgment. *Abrell v. Delaware Cty. Reg'l Wastewater Dist.*, 131 N.E.3d 725, 728 (Ind. Ct. App. 2019). Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences to support them. *Id.* A judgment is clearly erroneous when our review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We defer substantially to findings of fact but not to conclusions of law. *Id.* The purpose of specific findings and conclusions is to provide the parties and reviewing courts with the legal theory

upon which the trial court relied in reaching its decision. *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 652 (Ind. Ct. App. 2012). We may affirm a judgment on any legal theory, whether or not relied upon by the trial court, as long as the trial court's findings are not clearly erroneous and support the theory adopted. *RCM Phoenix Partners, LLC v. 2007 East Meadows, LP*, 118 N.E.3d 756, 760 (Ind. Ct. App. 2019). "Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute a basis for reversal even if erroneous." *Borth v. Borth*, 806 N.E.2d 866, 870 (Ind. Ct. App. 2004).

# II. Demolition Order

## A. In Rem Proceeding

[9] Before addressing the merits of this appeal, we pause to clarify the effect of any order issued by the trial court in this matter. Here, Culver filed its complaint listing The 27 Group, Inc., Mr. VanHawk, and Katie Delacruz as defendants and each defendant was served. *See* App. to Appellant's Br., Vol. II at 12.[8] However, The 27 Group, Inc., not Mr. VanHawk or Delacruz, is the owner of the record title to the Property and it has been administratively dissolved. Pursuant to Indiana Code section 23-1-45-7(d), claims against a dissolved

---

[8] The record reveals that service of Culver's complaint was sent to The 27 Group, Inc., Katie Delacruz, and Mr. VanHawk. However, for each, the Chronological Case Summary indicates "Service Returned Not Served" on September 18, 2018. App. to Appellant's Br., Vol. II at 4. Culver subsequently filed a request for service by publication, which was granted and executed on September 20, 2018. *See id*. at 5. Mr. VanHawk was personally served on September 28, 2018.

corporation may be enforced against the dissolved corporation, to the extent of its undistributed assets, or if the assets have been distributed in liquidation, against a shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less. However, a shareholder's total liability for all claims may not exceed the total amount of assets distributed to the shareholder. *Id*.

[10] At oral argument, Culver conceded that its complaint was an in rem action. Causes of action filed against property rather than against a person are actions in rem. *$100 v. State*, 822 N.E.2d 1001, 1008 (Ind. Ct. App. 2005), *trans. denied*. Culver never proved or attempted to prove that Mr. VanHawk was a shareholder of the dissolved corporation, potentially subjecting him to liability to the extent that corporate assets had been transferred to him, nor did Culver pierce or attempt to pierce the corporate veil or seek a personal judgment against Mr. VanHawk. As such, despite Mr. VanHawk being named a defendant in this action, any order issued by the trial court binds only The 27 Group, Inc. and does not constitute a personal judgment against Mr. VanHawk.

## B. Statutory Framework

[11] The crux of the dispute between the parties is the validity of the trial court's demolition order – with each party's argument premised on a different statutory framework. In essence, The 27 Group, Inc. argues that Culver's Unsafe Building Ordinance violates Indiana's Unsafe Building Law because Dewitt

served in a dual capacity as Culver's enforcement authority, in which he is charged with the duty of enforcing Culver's Unsafe Building Ordinance, and as a member of the Hearing Authority, which deprived it of its due process right to a fair and impartial hearing. The 27 Group, Inc. argues that the trial court was engaged in judicial review of the Hearing Authority's order and the deprivation of his due process rights renders the Hearing Authority's order and the trial court's demolition order void. Culver maintains that the trial court was not reviewing the Hearing Authority's order because it filed an independent civil action pursuant to Indiana Code section 36-7-9-17, in which the underlying administrative order and proceeding is immaterial. We first address this dispute among the parties.

[12] Indiana's Unsafe Building Law provides that an action by the hearing authority is subject to judicial review upon the request of any person with a substantial property interest in the unsafe premises or any person to whom the order or finding was issued. Ind. Code § 36-7-9-8(a). The person seeking judicial review must file a verified complaint which includes the findings of fact and action taken by the hearing authority. Ind. Code § 36-7-9-8(b). The complaint must be filed within ten days after the issuance of the hearing authority's order. *Id.* The trial court reviews the appeal de novo and may affirm, modify, or reverse the action taken by the hearing authority. Ind. Code § 36-7-9-8(c). We

conclude that, because The 27 Group, Inc. did not file a petition for judicial review, the trial court could not engage in judicial review.[9]

[13] On the other hand, pursuant to Indiana Code section 36-7-9-17(a), the department,[10] acting through its enforcement authority, may file a civil action regarding unsafe premises with the trial court, and the trial court may grant *one or more* kinds of the following relief *authorized by sections 18 through 22* of chapter 36-7-9: issuing an injunction, requiring posting of a performance bond, imposing civil penalties, appointing a receiver, permitting rehabilitation of the premises, enforcing an order by authorizing a contractor to perform the action required by the order, or allowing the enforcement authority to make the premises safe in an emergency situation. The statute specifically limits the relief the trial court may grant in an independent civil action under this section to those options described by sections 18 through 22. And contrary to Culver's assertions, none of these sections authorize the trial court to order demolition. Therefore, if Culver filed an independent civil action as it maintains, the trial court exceeded its statutory authority by ordering relief not authorized by

---

[9] Since no judicial review was sought and the Hearing Authority order became final, any question regarding the dual role of Dewitt is moot. Accordingly, the propriety of the underlying administrative hearing and order are immaterial to the resolution of this dispute.

[10] "Department" "refers to the executive department authorized by ordinance to administer this chapter. In a consolidated city, this department is the department of code enforcement authority, subject to IC 36-3-4-23." Ind. Code § 36-7-9-2. Section 150.068 of Culver's UBO provides, "The Town of Culver Building Commissioner shall be authorized to administer and to proceed under the provisions of said law in ordering the repair or removal of any buildings or materials found to be unsafe[.]" App. to Appellant's Br., Vol. II at 28.

statute, and this court could reverse the judgment and remand to the trial court to order relief authorized by statute.

[14] Having concluded the trial court could not have been engaged in judicial review of the Hearing Authority's order or have granted relief not authorized by the Unsafe Building Law, we now evaluate the validity of the trial court's demolition order on different grounds.

## C. Common Law Public Nuisance

[15] A public nuisance claim may be brought under Indiana Code section 32-30-6-6, which provides: "Whatever is injurious to health; indecent; offensive to the senses; or an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." There is no dispute that Culver did not cite to this statute in its complaint. In fact, at oral argument, Culver conceded that it did not cite to or rely on Indiana's Public Nuisance statute in its complaint and therefore did not plead statutory public nuisance. Nonetheless, we affirm the trial court's demolition under the theory of common law public nuisance.

[16] Although Indiana has specifically declared that the conduct prescribed in the statute constitutes a public nuisance, "the common law tort of public nuisance exists[.]" Restatement (Second) of Torts § 821B, cmt. b (1977). As the Supreme Court of Illinois has explained, "the codification of certain common law nuisances in the Criminal Code and the legislative declaration that certain other conditions constitute nuisances does not exclude common law nuisances

not codified therein from being classed as public nuisances." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1120 (Ill. 2004). Our supreme court also recognizes this principle and has held that "a public nuisance may exist without an underlying independent tort, although some elements of the two may be indistinguishable in practical terms[.]" *City of Gary ex. rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1233-34 (Ind. 2003) (where city filed public nuisance claim against firearm manufacturers alleging (among other things) negligence and foreseeable injury). The Restatement (Second) of Torts § 821B provides the common law action for a public nuisance and states:

> (1) A public nuisance is an unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
> > (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
> >
> > (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
> >
> > (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

A public right is one that is common to all members of the general public, but it is not "necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large." *Id*. at cmt. g. The remedies available under the common law tort of public nuisance include the recovery of damages or injunctive relief to abate the nuisance.[11] Restatement (Second) of Torts § 821C. To recover in a suit to enjoin to abate a public nuisance, one must have the authority as a public official or public agency to represent the state or a political subdivision in the matter or have standing to sue as a representative of the general public. *Id*. at (2)(b)-(c).

[17] Here, Culver, through its Building Commissioner, sufficiently pleaded a common law public nuisance claim in its complaint by alleging that the Property is hazardous to public health, emits an odor, is a public nuisance located in the middle of a residential area, and has a negative effect on property values and the quality of life of those in the surrounding area. Culver also alleged that the Property will continue to harm the Town, its citizens, and neighbors unless the nuisance is removed. *See* App. to Appellants' Br., Vol. II at 12-13; *see also Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1141-43 (Ohio 2002) (city sufficiently pleaded common law public nuisance claim when it alleged that the defendants created and maintained a public nuisance by

---

[11] Abatement is defined as the "act of eliminating or nullifying[.]" Black's Law Dictionary (11th ed. 2019).

manufacturing, marketing, distributing, and selling firearms in ways that unreasonably interfere with the public health, welfare, and safety in the city and the residents of the city have a common right to be free from such conduct). In essence, Culver sought to enjoin the Corporation from continuing to neglect the Property by obtaining an order to repair or abate the public nuisance altogether.

[18] The trial court held a hearing on Culver's complaint during which Culver presented over sixty-five photos depicting the condition of the Property, and offered testimony from two Culver residents who own property near the Property, the Building Commissioner, Town Manager, member of the Town Council, and the President of the Culver Redevelopment Commission. Leist, the Town Manager, testified that Lakeshore Drive is Culver's "busiest street" and is "at the edge of one commercial district that then connects over to our schools on the other end of town[.]" Tr., Vol. II at 48. Leist visited the Property and testified that "immediately upon getting out of [his] car on Lakeshore Drive[, the odor] was noticeable, you know a warm day in June, and with that window broken or the door broken, it was unmistakable." *Id*. Leist further explained the extent of pedestrian and vehicle traffic, stating that the Property is right next to Culver Park on Lake Maxinkuckee and

> [w]e've got people walking to the beach all summer, we've got Culver Boys and Girls Club who we provide free access to the park and beach all summer walking back and forth there . . . daily. . . . [S]ixty (60) to eighty (80) kids daily walking by there, and yeah, we've had incidents of broken glass, the door being open, windows being broken. Condoms and beer cans being found in the alcoves there as well.

*Id.* at 48-49. At the end of the hearing, the trial court found the Property to be a public nuisance that should be demolished. The trial court subsequently entered a written demolition order, in which it found that the Property is located on the main street connecting the public park to the main commercial area of Town, is a public health hazard and emits an offensive odor, and has a negative effect on property values and the quality of life to the surrounding neighbors and many town citizens who pass by. *See* Appealed Order at 2-4.

[19] Although not the theory relied upon by the trial court, these findings support a conclusion that the Property constitutes a common law public nuisance and should be abated, namely that the Property's deteriorating condition substantially interferes with the Town and its citizens' right to be free from public health hazards. *RCM Phoenix Partners, LLC*, 118 N.E.3d at 760; *see also* Restatement (Second) of Torts § 821B(1). These findings also demonstrate that the Property affects the peace, safety, and comfort of those who walk along Lakeshore Drive to go to the beach or the commercial district as they are subjected to the offensive odor emitted by the Property. Restatement (Second) of Torts § 821B(2)(a). In sum, the trial court's demolition order was not clearly erroneous under a common law public nuisance claim.

## III. Appellate Attorney Fees

[20] Culver requests an award of appellate damages pursuant to Indiana Appellate Rule 66(E), which provides for the assessment of damages "if an appeal, petition, or motion, or response, is frivolous or in bad faith." Our discretion to

award attorney fees under Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). And although our authority to award damages on appeal is discretionary, "we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Townsend v. Townsend*, 20 N.E.3d 877, 880 (Ind. Ct. App. 2014), *trans. denied*. A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010).

[21] Indiana appellate courts group claims for appellate damages into two categories – substantive bad faith or procedural bad faith. *Id*. Substantive bad faith implies conscious wrongdoing due to "dishonest purpose or moral obliquity" whereas procedural bad faith exists when a party flagrantly disregards the form and content requirement of our rules, omits and misstates relevant facts appearing in the record, and files briefs that appear to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id*. To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and argument are utterly devoid of all plausibility. *Id*. at 169. Even when an appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Manous, LLC v. Manousogianakis*, 824 N.E.2d 756, 768 (Ind. Ct. App. 2005).

Culver asserts that, because Mr. VanHawk failed to participate in the proceedings before the trial court by disclaiming any interest in the Property and voluntarily leaving the hearing, The 27 Group, Inc. should be estopped from challenging any issues on appeal. *See* Appellees' Brief at 35. Furthermore, Culver takes issue with the Corporation's recitation of the facts in its appellate brief, stating that it does not mention that Mr. VanHawk disclaimed all interest in the Property and chose not to participate in the hearing. Culver claims that The 27 Group Inc.'s omission of this important fact constitutes procedural bad faith.

Culver also claims that the Corporation demonstrated a "pattern of delay and harassment" throughout its interactions with Culver. *Id.* at 37. To demonstrate this delay, Culver argues that, at the initial hearing, Mr. VanHawk stated that he understood what the case was about, he required assistive technology for his hearing disability, and he needed to obtain counsel. The trial court accordingly granted a continuance to allow Mr. VanHawk time to hire counsel and for the trial court to accommodate Mr. VanHawk's disability by obtaining the technology to allow real time transcription. However, at the continued hearing, Mr. VanHawk appeared without counsel, disclaimed all interest in the Property, and voluntarily chose not to participate in the proceedings. Culver maintains that Mr. VanHawk did not truly understand what the case was about until after the first hearing and then decided it did not pertain to him and "[n]evertheless, he didn't call the trial court and tell them to cancel the real time transcription and go on without him. [Instead], he left everyone to continue to

incur expenses and he dragged out the proceedings." *Id.* at 39. Culver's argument here is problematic. Culver never attempted to pierce the corporate veil, nor did it allege that Mr. VanHawk had corporate assets. Therefore, there was never any basis for personal liability, yet Culver sporadically argues that Mr. VanHawk is subject to liability despite conceding that this is just an in rem action.

[24]    Furthermore, following the Hearing Authority's order, The 27 Group, Inc. had ten days to petition for judicial review and did not do so. Ind. Code. § 36-7-9-8(b). Therefore, the Hearing Authority's order was a final administrative order, which provided Culver with the remedy it initially wanted and later sought from the trial court – demolition. Culver's decision to file an independent civil action to obtain an order to demolish the Property was unnecessary and, at oral argument, Culver acknowledged that it was taking a "belt and suspenders" approach. For this sole reason, we decline to award appellate damages to Culver.

# Conclusion

[25]    For the reasons set forth above, we conclude the trial court's demolition order was not clearly erroneous under the theory of common law public nuisance. To the extent that The 27 Group, Inc. has corporate assets, any liability resulting from the trial court's demolition order binds the Corporation, not Mr. VanHawk. Because the Hearing Authority's order was a final administrative order which had already granted the relief Culver later sought by filing its

complaint with the trial court, this litigation was unnecessary, and we decline to award Culver appellate damages from The 27 Group, Inc. Accordingly, the judgment of the trial court is affirmed.

[26] Affirmed.

Najam, J., and Bradford, J., concur.