**MANOUS, LLC d/b/a Mayberry Café, Inc., Appellant–Defendant,**

**v.**

**Pauline MANOUSOGIANAKIS, Appellee–Plaintiff.**

**No. 93A02–0408–EX–683.**

Court of Appeals of Indiana.

March 31, 2005.

---

John R. Gastineau, Eberhard & Gastineau, Fort Wayne, IN, Attorney for Appellant.

Nancy A. McCaslin, James L. McCaslin, McCaslin & McCaslin Elkhart, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Manous, LLC ("Manous") appeals the decision of the Worker's Compensation Board of Indiana (the "Board") awarding benefits to the family of an employee who was murdered while at his place of employment. Manous presents the following issues for our review:

1. Whether the positional risk doctrine applies when an employee is murdered at his workplace without explanation.

2. Whether sufficient evidence exists to support the Board's finding that Christos Manousogianakis's ("Christos") dependents are entitled to worker's compensation benefits.

Christos's wife, Pauline Manousogianakis ("Manousogianakis") cross-appeals, seeking appellate attorney's fees and a ten percent increase in the worker's compensation award.

We affirm and remand.[1]

### FACTS AND PROCEDURAL HISTORY

Christos, the president of Manous, was employed at the Mayberry Café, an Elkhart restaurant that was operated by Manous.[2] On Sunday, December 27, 1998, Christos arrived at Mayberry Café between 5:30 a.m. and 6:00 a.m. to open the restaurant. Manousogianakis arrived later and worked at the restaurant with her husband until she left at 1:00 or 2:00 in the afternoon. Mayberry Café remained open until 3:00 p.m. on Sundays, and Christos stayed to close the restaurant.

At approximately 5:00 p.m., after Manousogianakis had called Christos twice at the restaurant and received no answer, she returned to Mayberry Café. Manousogianakis entered through the back door, which Christos routinely kept unlocked while he was at the restaurant, and discovered her husband's body in the break room. He had been shot once in the head, and the Elkhart County Coroner later determined that the death was a homicide.

On October 2, 2000, Manousogianakis filed an Application for Adjustment of Claim with the Board on behalf of herself and her three minor sons. Soon thereafter, Manous filed a *subpoena duces tecum* and a Request for Production of Documents to obtain all police and coroner records that pertain to Christos's death, but the Elkhart County Prosecutor objected. On March 15, 2001, Manous filed with the Board a Motion to Compel the police and coroner to comply with Manous's previous request for documents. In response, the

---

1. We hereby deny Manousogianakis's Motion to Strike.

2. Christos and his wife were the sole shareholders in Manous.

State filed a Complaint for Declaratory Judgment and Issuance of a Protective Order in the Elkhart Circuit Court, and Manous filed a Counterclaim. The trial court found in favor of the State and awarded the requested relief.[3]

In December 2003, Manous and Manousogianakis submitted briefs to the Single Hearing Member who subsequently found that Manousogianakis and her sons were entitled to worker's compensation benefits. The Single Hearing Member found and concluded in relevant part as follows:

6. That Christos [ ] often worked in the restaurant as early as 5:30 a.m., preparing for the restaurant's daily business.

7. That Christos [ ] also regularly stayed over, after patrons and employees left at the end of the business day, to finish closing up the restaurant, complete the required duties to close the restaurant, and prepare it for the following day's business.

8. That Christos [ ] opened the restaurant on December 27, 1998 and stayed alone to close the restaurant on that day.

9. That on December 27, 1998, after all patrons and employees had left the restaurant, and while in the process of attending to the details of closing the restaurant for the day, Christos [ ] was shot and killed by an unknown assailant.

10. That at approximately 5:00 p.m. on December 27, 1998, Christos [ ] was found dead by his wife in the restaurant's break room, sitting in a chair with blood on the floor.

11. That the killing occurred between the time the restaurant closed at approximately 3:00 p.m. and 5:00 p.m. when Mrs. Manousogianakis returned to the restaurant and found her husband.

12. That at the time the police responded to the 911 call made by Mrs. Manousogianakis[,] they found an opened cabinet door/drawer in Christos's [ ] office.

13. That the cabinet the police found opened was the cabinet in which Christos [ ] normally kept approximately $1,000.00 in coins.

14. That the police found an undisclosed amount of cash in an undisclosed location at the restaurant at the time of their investigation.

15. That five years have passed and no motive for the shooting has been determined, and the investigation by the Elkhart Police Department has not been closed.

16. That no arrests have been made in the murder case.

\* \* \*

21. *That Christos was murdered in the course of his employment with Manous [ ].*

22. *That Christos['s][ ] death resulted from a neutral risk and not one personal to the deceased.*

23. *That the positional risk doctrine is applicable.*

24. *That Christos['s][ ] death arose out of his employment.*

---

**3.** The court concluded that releasing the requested information "would completely compromise the ongoing criminal investigation being conducted by the Elkhart [ ] Police Department" and that "it is absolutely essential to the said murder investigation that the information requested by [Manous] be maintained as confidential and as part of the criminal investigation." Appellee's Addendum to Brief at 26–27.

* * *

26. That Pauline Manousogianakis and their three dependent sons are entitled to benefits under the Worker's Compensation Act.

Appellant's App. at 4–6 (emphases added). Manous appealed to the Full Board, which affirmed the Single Hearing Member's decision following a hearing. This appeal ensued.

## DISCUSSION AND DECISION

### Worker's Compensation Claim

[1, 2] The Worker's Compensation Act (the "Act") authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind. Code § 22–3–2–2(a). An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Milledge v. Oaks*, .784 N.E.2d 926, 929 (Ind.2003). An injury "arises out of" employment, when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Id.* The nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Id.*

■ The risks incidental to employment fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks neither distinctly associated with employment nor distinctly personal in character. *Id.* at 930. "Risks in category number one are those we intuitively think of as work connected"; risks in category number two are those "caused by a pre-existing illness or condition unrelated to employment"; and risks in category number three are "neutral risks." *See id.* at 930, 931 n. 1. While risks in categories one and three are generally compensable under the Act, risks personal to the claimant are not. *See id.* at 930.

■ Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board. *Waldridge v. Futurex Indus.*, 714 N.E.2d 783, 785 (Ind.Ct.App.1999), *trans. denied.* Both requirements must be met before compensation is awarded, and neither alone is sufficient. *Milledge*, 784 N.E.2d at 929. The person who seeks worker's compensation benefits bears the burden of proving both elements. *Id.*

### Issue One: Positional Risk Doctrine

■ Manous first asserts that the Board erred when it applied the positional risk doctrine in this case because Indiana courts have applied that doctrine only in the context of an employee's unexplained slip and fall and because it would conflict with several established public policies of this State.[4] The positional risk doctrine is a rule of general application, and, contrary to Manous' suggestion, the fact that its previous applications have not involved unexplained murders is not dispositive. *See St. Mary's Med. Ctr., Inc. v. United Farm Bureau Family Life Ins. Co.*, 624

---

4. Contrary to Manous' suggestion, *Milledge* was not a slip and fall case. In *Milledge,* the claimant twisted her ankle upon exiting her car in her employer's parking lot, and the cause of that injury was unexplainable. 784 N.E.2d at 930. But the court found those facts "analogous to [ ] cases involving injuries suffered by an employee as the result of an 'unexplained' fall." *Id.*

N.E.2d 939, 946 (Ind.Ct.App.1993) (quoting Justice Holmes' statement that "the standards of the law are standards of general application"). We have not yet had occasion to consider the issue of whether the positional risk doctrine applies to cases involving murdered employees, and, as such, the question presented by Manous is a matter of first impression.

On appeal, the Board's conclusions of law are reviewed de novo. *Bertoch v. NBD Corp.*, 813 N.E.2d 1159, 1160 (Ind.2004). When interpreting the provisions of the Worker's Compensation Act, we construe the Act and resolve doubts in the application of terms in favor of the employee so as to effectuate the Act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy. *Waldridge*, 714 N.E.2d at 785.

In *Milledge*, our supreme court adopted the positional risk doctrine and thereby shifted the burden of proof on the "arising out of employment" element to employers when the claimant has shown that his injury occurred in the course of employment and was the result of a neutral risk. 784 N.E.2d at 931, 933–34. There, the court held that unexplained accidents are classified as neutral risks and that "the positional risk doctrine is the appropriate analytical tool for resolving questions concerning injuries that result from neutral risks." *Id.* at 932, 933–34. The court explained the operation of that doctrine as follows:

> Under [the positional risk] doctrine, an injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the] claimant in the position where he was injured. This but for reasoning is the foundation of the positional risk doctrine, under which if the "in the course of" employment element is met, then there is a rebuttable presumption that the injury "arises out of" employment.... [T]he burden is [then] on the employer to demonstrate that the injury was actually the result of a cause personal to the claimant.

*Id.* at 931 (quotations omitted) (emphasis in original).

Here, it is undisputed that Christos's murder cannot be explained. Thus, pursuant to *Milledge*, it is classified as a neutral risk, i.e., one that is neither personal to the claimant nor distinctly associated with the employment, and application of the positional risk doctrine is proper. *See id.* at 933–34. Still, Manous baldly asserts that the doctrine should not be applied when an employee is murdered because workplace murders differ from slip and fall injuries in that the latter are "more likely to be related to employment conditions than personal conditions." Brief of Appellant at 9. We cannot agree.

This case falls squarely within the holding of *Milledge*. The hallmark characteristic of a neutral risk is its inexplicable nature, and, in that regard, an unexplained murder is no less a neutral risk than is a more commonplace unexplained accident. In neither case can the cause of the injury be attributed to purely personal or purely employment conditions. And, pursuant to *Milledge*, which is binding precedent on this court, the positional risk doctrine must be applied in cases of neutral risks. *Milledge*, 784 N.E.2d at 934. As Professor Larson aptly stated:

> Occasionally an assault occurs for which no explanation whatever appears.... Nothing connects it with the victim privately; neither can it be shown to have had a specific employment origin. If the claimant is in fact exposed to that assault because he or she is discharging employment duties at that time and place, there is no better reason here

than in the explained[ ] fall or death cases to deny an award merely because claimant cannot positively show that the assault was motivated by something connected with the work.

ARTHUR LARSON & LEX LARSON, LARSON'S WORKERS' COMPENSATION LAW § 8.03[3], at 8–64 (2004).

Manous also makes a number of policy arguments in support of its position. Specifically, Manous asserts that application of the positional risk doctrine in unexplained murder cases places a burden of proof on employers that is impossible to meet and that it may lead to interference with criminal investigations and "wrongdoers profit[ing] from their wrongful conduct." Brief of Appellant at 11. Initially, we note that the discussion in *Milledge* disposes of Manous's first policy argument. While we agree that employers face a formidable evidentiary hurdle in such circumstances, the *Milledge* court determined that employers should bear the risk of loss of neutral risks. The court acknowledged that neutral risks create risk of loss problems "because the risk does not fall clearly upon the employer or the employee," but reasoned:

> Either the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life.

*Milledge*, 784 N.E.2d at 932 (quoting LARSON, *supra*, § 4.03, at 4–3). Further, the court noted that application of the doctrine to neutral risks comports with the Act's humane purposes. *Id.*

■ Manous's remaining policy arguments are likewise unpersuasive. First,

Manous fails to explain how application of the positional risk doctrine in unexplained murder cases would lead to greater interference with ongoing criminal investigations, as it contends. Indeed, under the current regime, the employer must conduct an independent murder investigation to defend itself; under the proposed regime, the claimants must do so in order to prosecute their claims. Second, Manous's assertion that application of the doctrine might allow wrongdoers to benefit from their wrongful conduct is mere speculation. In any event, "arguments concerning public policy are best addressed to our legislature, and not this court, which must adhere to binding precedent." *Comfax Corp. v. North Am. Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind.Ct.App.1992). We hold that the positional risk doctrine applies when an employee is murdered without explanation and that the Board properly applied the positional risk doctrine in this case.

### Issue Two: Sufficiency of the Evidence

■ Manous next contends that Manousogianakis failed to prove both elements necessary to obtain compensation, namely, that Christos's death arose out of and in the course of his employment with Manous. Again, both requirements must be met before compensation is awarded, and neither alone is sufficient. *Milledge*, 784 N.E.2d at 929. Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board. *Waldridge*, 714 N.E.2d at 785. Indiana Code Section 22–3–4–8(b) provides that "an award by the full board shall be conclusive and binding as to all questions of fact, but either party ... may ... appeal to the court of appeals for errors of law under the same terms and conditions as govern appeals in ordinary civil actions." Accordingly, we apply a deferential standard of review under which

we are bound by the Board's findings of fact and may not disturb its determination unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Metro. Sch. Dist. v. Carter,* 803 N.E.2d 695, 697 (Ind.Ct.App.2004).

 We first review the record to determine if there is any competent evidence of probative value to support the Board's findings, and then examine the findings to see if they are sufficient to support the decision. *Greenberg News Network v. Frederick,* 793 N.E.2d 311, 315 (Ind.Ct.App.2003). We will not reweigh the evidence or assess witness credibility, but will consider only the evidence most favorable to the award, together with the reasonable inferences flowing therefrom. *Id.*

In this case, Manousogianakis presented evidence to show that: (1) Christos was the president of Manous; (2) Manous operated Mayberry Café; (3) Christos worked at Mayberry Café; (4) Christos's duties included cooking, waiting on customers, busing tables, acting as cashier, ordering food and other supplies, hiring other employees, bookkeeping, and banking; (5) Christos often arrived before Mayberry Café opened to prepare for the daily business; (6) Christos opened the restaurant on December 27, 1998, the day he was murdered; (7) Manousogianakis left the restaurant at either 1:00 or 2:00 that afternoon; (8) before Manousogianakis left, Christos indicated to her that he intended to stay at the restaurant; (9) at 5:00 p.m., Manousogianakis found Christos's body in the break room of the restaurant; and (10) Christos had been shot once in the head.

Still, Manous contends that that evidence is insufficient to prove that his death occurred in the course of employment. In particular, Manous asserts that "Manousogianakis showed no more than that [Christos] died at his place of [ ] employment."

Brief of Appellant at 12. Again, an accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Milledge,* 784 N.E.2d at 929. Here, Christos was president of Manous, the corporation which operated Mayberry Café, and he did "everything" at the restaurant. Transcript at 23. While Christos' status as president does not determine the validity of his dependents' worker's compensation claim, it is a fair inference that he was engaged in business-related activities when he was murdered. Indeed, there is no evidence that any other activity was conducted on the premises. Manous challenges the logic of the inference drawn, but, given Christos's position, it would be reasonable to expect Christos "to be at the restaurant during that time and fulfilling some duty of employment to prepare the restaurant for the next morning's customers." Brief of Appellee at 12. Accordingly, the Board did not abuse its discretion when it concluded that Manousogianakis met her burden of proof on that element.

 Because Manousogianakis proved that Christos's death occurred in the course of employment and because we have held that the positional risk doctrine applies in this case, there is a rebuttable presumption that Christos's death "arose out of" his employment with Manous, and the burden is on Manous to demonstrate that the murder was actually the result of a cause personal to Christos. *See Milledge,* 784 N.E.2d at 931. Here, Manous presented evidence that: (1) there was no sign of forced entry or damage to the premises, and (2) the police informed Manousogianakis that they found an undisclosed amount of money on the premises

after the murder and that Christos's death resulted not from a robbery, but from a personal matter. In response, Manousogianakis argues that the police statements constitute inadmissible hearsay which neither the Board nor this court may consider.

 It is well established that the Board may not base its decisions solely upon inadmissible hearsay. *Neidige v. Cracker Barrel*, 719 N.E.2d 441, 444 (Ind. Ct.App.1999). There must be a "minimum level of reliability" present in the evidence considered by the Board. *Id.* However, inadmissible hearsay must be objected to in order to preserve the issue for review. *Id.* Incompetent evidence may support the Board's findings where there is no objection. *Id.* In this case, Manousogianakis did not object to the introduction of the police statements, and, thus, it was proper for the Board to consider those statements.

 Nevertheless, as fact-finder, the Board weighs the evidence before it and is free to disregard completely any portion thereof. *See Weiss v. State*, 735 N.E.2d 1194, 1197 (Ind.Ct.App.2000) (fact-finder responsible for weighing conflicting evidence and determining witness credibility). Here, the police statement that Christos's murder was the result of a personal matter did not appear in the Board's findings, and, as such, it is clear that the Board attributed little, if any, weight to that statement.[5] In addition, there was evidence that Christos routinely kept the back door unlocked while he was at the restaurant, that he usually kept approximately $1,000 in coins in a cabinet drawer in his office, that the drawer was "always closed," and that when the police arrived

to investigate the murder, the drawer was open. Transcript at 24. Manous's argument amounts to a request that we reweigh the evidence, which we cannot do. We conclude that the Board did not abuse its discretion when it concluded that Manous failed to overcome the presumption that Christos's murder arose out of his employment.

Because Manousogianakis demonstrated that Christos's murder occurred in the course of his employment and because Manous failed to rebut the presumption that the murder arose out of his employment, the Board did not err when it determined that Manousogianakis is entitled to worker's compensation benefits.

## Cross–Appeal

 Manousogianakis first asserts that Manous's appeal was in bad faith and undertaken for the purpose of delay and that she is entitled to appellate attorney's fees pursuant to Indiana Appellate Rule 66(E). That rule provides, in pertinent part: "The Court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney['s] fees." Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind.Ct.App.2003). Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Id.* A strong showing is required to justify an award of appellate

---

**5.** In contrast, the statement about the police discovering an undisclosed amount of money was included in the Board's findings.

damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Tioga Pines Living Ctr., Inc. v. Ind. Family & Soc. Serv. Admin.*, 760 N.E.2d 1080, 1087 (Ind.Ct. App.2001), *trans. denied.*

Indiana appellate courts have formally categorized claims for appellate attorney fees into "procedural" and "substantive" bad faith claims. *Thacker*, 797 N.E.2d at 346. Here, Manousogianakis argues both procedural and substantive bad faith.

■ Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.* at 346–47. Even if the appellant's conduct falls short of that which is "deliberate or by design," procedural bad faith can still be found. *Id.*

Here, Manousogianakis argues that filing the instant appeal was done for the purpose of delaying the payment of benefits to Manousogianakis, that "[n]umerous arguments . . . are not supported by citations to authority," and that the facts are misstated. Brief of Appellee at 29. We disagree. Our review of the record reveals acts taken at the administrative level which might well support an argument that Manous sought to delay proceedings. But Manousogianakis seeks *appellate* attorney's fees, and she presents no evidence that this appeal was undertaken with dilatory intent. Manousogianakis's remaining procedural bad faith claims also lack merit. To the extent that Manous did not strictly comply with our procedural rules, we conclude that those flaws do not rise to the level of egregiousness punishable under Appellate Rule 66(E). *See Ind. CPA Soc'y, Inc. v. GoMembers, Inc.*, 777 N.E.2d

747, 753 (Ind.Ct.App.2002) (finding shortcomings in party's brief were not "so flagrant or significant as to taint the appeal as vexatious"). Therefore, Manousogianakis's procedural bad faith claim must fail.

■ To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Thacker*, 797 N.E.2d at 346. As we have noted above, Manous raises an issue of first impression, namely, whether the positional risk doctrine applies when an employee is murdered without explanation. Manous's position is "consistent with reasonable advocacy grounded in established legal principles," and although we hold against Manous today, its contentions and arguments are not utterly devoid of all plausibility. *GoMembers*, 777 N.E.2d at 753. Therefore, an award of appellate attorney's fees pursuant to Appellate Rule 66(E) would be inappropriate. *See Carter–McMahon v. McMahon*, 815 N.E.2d 170, 180 (Ind.Ct. App.2004) (denying husband's request for appellate damages and attorney's fees where wife raised an issue of first impression); *GoMembers, Inc.* 777 N.E.2d at 753 (concluding that award of appellate attorney's fees is inappropriate where party raised a matter of first impression).

■ Manousogianakis next contends that she is entitled to an increased award pursuant to Indiana Code Section 22–3–4–8(f). That statute provides, in relevant part: "An award of the full Board affirmed on appeal, by the employer, shall be increased [ ] five percent (5%), and by order of the court may be increased ten percent (10%)." Where this court affirms an award by the Board, the appeal was not frivolous, and appellate review was not thwarted by the actions of the employer, the award should be increased by five per-

cent, but not by ten percent. *Tanglewood Trace v. Long,* 715 N.E.2d 410, 416 (Ind. Ct.App.1999), *trans. denied.*

Manousogianakis asserts that she is entitled to a ten percent increase based upon the existence of substantive and procedural bad faith and "the extended period [of time] in which [she] and her sons have been prevented from obtaining benefits." Brief of Appellee at 31. But we have already determined that Manous did not act in bad faith, and the passage of time in this case does not warrant a ten percent increase in her award. *See Calvary Temple Church, Inc. v. Paino,* 555 N.E.2d 190, 195 (Ind.Ct.App.1990) (increasing worker's compensation award by only five percent where employer's failure to comply with rules of appellate procedure did not thwart appellate review and appeal was not frivolous); *but see Graycor Indus. v. Metz,* 806 N.E.2d 791, 801–02 (Ind.Ct.App.2004) (increasing worker's compensation award by ten percent where some of employer's arguments were "patently disingenu[ous]" and claimant was prevented from obtaining benefits for "extended period"). Manousogianakis is entitled to a five percent increase in her award. *See* Ind.Code § 22–3–4–8(f).

## CONCLUSION

In sum, Manousogianakis demonstrated that Christos's unexplained murder occurred in the course of his employment. Under the positional risk doctrine, there was a presumption that Christos's death arose out of his employment, which Manous failed to rebut. Thus, the Board did not err when it determined that Manousogianakis was entitled to worker's compensation benefits. We also conclude that Manousogianakis is not entitled to appellate attorney's fees. Because we are affirming the full Board's decision on appeal, however, Manousogianakis is entitled to a five percent increase in her award pursuant to Indiana Code Section 22–3–4–8(f). We remand this case to the Board for further proceedings consistent with this opinion.

Affirmed and remanded.

KIRSCH, C.J., and VAIDIK, J., concur.