## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2017, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jeffry G. Price
Peru, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephanie Leffler,

*Appellant-Respondent,*

v.

Dustin Verbosky,

*Appellee-Petitioner.*

June 22, 2017

Court of Appeals Case No.
52A02-1610-JP-2275

Appeal from the Miami Circuit Court

The Honorable Daniel C. Banina, Special Judge

Trial Court Cause No.
52C01-1002-JP-10

**Barnes, Judge.**

## Case Summary

[1] Stephanie Leffler ("Mother") appeals the trial court's order modifying Dustin Verbosky's ("Father") child support obligation claiming the court erred in

calculating Father's weekly gross income and in crediting him with parenting time. We reverse and remand.

## Issues

The issues before us are:

I. whether Mother's appeal is timely;

II. whether the trial court correctly calculated Father's child support obligation; and

III. whether Mother is entitled to appellate fees.

## Facts

In 2009, Mother gave birth to K.L.-V. ("child"). On March 4, 2011, the trial court entered a paternity order that established Father as the father of the child and directed Father to pay child support in the amount of $115.00 per week. No activity occurred in the case between 2011 and January 2014.

On January 24, 2014, Father filed a Petition to Modify Child Support and Parenting Time and a Petition for Citation for Indirect Contempt against Mother. On August 5, 2014, Mother filed a Verified Petition to Restrict Visitation, requesting that Father's parenting time be restricted.

On August 8, 2014, the court ordered Father's parenting time to be supervised. On November 12, 2014, the court found Mother not in contempt, increased

Father's supervised parenting time, and directed the parties to try to agree on child support.

[6] On January 5, 2015, Mother filed a motion requesting that Father undergo an Indiana Trial Rule 35 medical examination,[1] that the child receive professional counseling, and that Father's supervised parenting time be supervised by a professional for three months. The trial court directed the parties to agree on a counselor for the child. On Mother's motion, the court held the Rule 35 medical examination request in abeyance pending a recommendation and/or report from the child's counselor, once the counselor was appointed. On January 20, 2015, Mother filed her recommendation as to the child's counselor.

[7] On April 6, 2015, the court held a child support hearing. At the hearing, the parties were directed to submit recommendations for the child's counselor and Father was directed to provide pay stubs and his tax return. The parties complied.[2]

[8] On June 8, 2015, the court issued an order that modified Father's child support payment to $72.00 per week, retroactive to January 31, 2014. The court credited Father with ninety-eight overnight visitations of parenting time. Also

---

[1] Indiana Trial Rule 35 provides: "When the mental or physical condition (including the blood group) of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner . . . ."

[2] Mother already had filed her recommendation for a counselor but additionally filed the recommended counselor's curriculum vitae.

on June 8, 2015, the trial court issued a separate order appointing a counselor for the child. The order instructed the counselor to evaluate the child and provide a recommendation to the court "as to the timing and methodology of increased parenting time for [Father]." Appellant's App. Vol. 2 p. 20.

[9] On June 25, 2015, Mother filed what she titled a motion to correct error, challenging the trial court's June 8th modification of Father's child support obligation. No hearing was set on the motion, and the court did not explicitly deny the motion.

[10] On October 19, 2015, the child's counselor filed his report with the trial court. On November 12, 2015, Father moved for increased parenting time. On December 11, 2015, Father moved for a refund of an alleged overpayment of child support.

[11] On January 4, 2016, the trial court held a hearing on Father's November and December 2015 motions for increased parenting time and for the alleged overpayment of child support. When it provided a brief background of the proceedings for the record, the trial court noted that it had issued an order on child support on June 8, 2015, that Mother filed a motion to correct error, that the court did not rule on the motion, and that the time limit to appeal that issue had run. Mother argued that the June 8, 2015 order was not a final, appealable order.

[12] On January 8, 2016, Mother filed a motion for a final order on child support, or in the alternative, a request for a belated interlocutory appeal because she

wanted to appeal the trial court's June 8, 2015 child support order. On January 26, 2016, the trial court denied the motion.

[13] On February 24, 2016, Mother filed a Notice of Appeal of the trial court's January 26, 2016 order, seeking to appeal the June 8, 2015 child support order. Father filed a motion to dismiss, arguing that the appeal was untimely. On May 31, 2016, this court found that the June 8, 2015 order was interlocutory, dismissed Mother's appeal without prejudice, and remanded the matter to the trial court. *See* Cause No. 52A04-1602-JP-424.[3]

[14] On September 9, 2016, the trial court reissued its June 8, 2015 order as a final order. Mother now appeals. Additional facts will be provided as necessary.

# Analysis

## I. Timeliness of Appeal

[15] Mother first filed a notice of appeal under Cause No. JP-424, on February 24, 2016, attempting to appeal the trial court's June 8, 2015 child support order. Father filed a motion to dismiss, arguing that the appeal was untimely because Mother failed to file her Notice of Appeal within thirty days after the motion to correct error that she filed on June 25, 2015 was deemed denied. The motions panel of this court found that the June 8th order was interlocutory and granted

---

[3] Under Cause No. 52A02-1602-JP-424, Mother filed a Motion to Reconsider and/or to Clarify. This court issued an order on June 14, 2016, that granted in part the motion and clarified that the trial court's June 8, 2015 order was interlocutory and that Mother was permitted to file a notice of appeal upon entry of a final, appealable order.

the motion to dismiss without prejudice to Mother filing a notice of appeal upon entry of a final order.

[16] Mother now revisits the issue of the timeliness of her appeal, contending that the instant appeal of the trial court's September 9, 2016 order, which reissued the June 8th child support order, is timely. Mother maintains that the June 8th order, when it originally was issued, was not a final judgment because issues involving parenting time and counselor recommendations remained unresolved, and the trial court did not certify the order as final and appealable. Father revives his previous argument that the order was final and appealable because Mother filed a motion to correct error and the motion was deemed denied on August 9, 2015, after the trial court did not set the matter for a hearing or rule on the motion within forty-five days. *See* Ind. Trial Rule 53.3(A).[4] Father argues that, because Mother did not file her Notice of Appeal within thirty days of August 9, 2015, she cannot now appeal the June 8th child support order.

[17] Although Mother and Father argued the timeliness of Mother's appeal under Cause No. JP-424, they are not precluded from again presenting their arguments. *See D.C., Jr. v. C.A.,* 5 N.E.3d 473, 475 (Ind. Ct. App. 2014) (writing

---

[4] Indiana Trial Rule 53.3(A) provides:

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

panel is not precluded from reconsidering the ruling of the motions panel). "It is well established that we may reconsider a ruling by the motions panel." *Cincinnati Ins. Co. v. Young,* 852 N.E.2d 8, 12 (Ind. Ct. App. 2006), *trans. denied.* "While we are reluctant to overrule orders decided by the motions panel, this court has inherent authority to reconsider any decision while an appeal remains in fieri." *Miller v. Hague Ins. Agency, Inc.,* 871 N.E.2d 406, 407 (Ind. Ct. App. 2007).

[18] The trial court's June 8, 2015 child support order reads:

> On January 24, 2014, the Petitioner, Dustin Verbosky, filed his Verified Petition to Modify Child Support and Parenting Time. Much has happened between the date Mr. Verbosky filed his petition and the current time and it seems that the child support issue has gotten lost in the process. The Court received the 2014 Tax Return for Mr. Verbosky. Based off that return[,] the Court calculates his weekly gross income to [be] $594.00. The Court calculates the weekly income of the mother, Stephanie Leffler, to be $316.60. The Court provided credit to Ms. Leffler for a subsequent born child. The Court declines to include the [health] insurance information provided by the Petitioner due to the fact that the weekly amount would be unreasonable pursuant to Indiana Parenting Time Guidelines. The Court did however calculate in credit for 98 overnights parenting time for the Petitioner. The Court realizes that the Petitioner is not actually enjoying any overnight visitation at this time. However, under ordinary circumstances he would. The Court also adopts the 6% rule as indicated by the attached Child Support Worksheet. The Court now modifies the Petitioner's child support to be $72.00 per week retroactive back to the first Friday after January 24, 2014.

Appellee's Corrected App. Vol. 2 p. 16. We agree with the motions panel's determination that the trial court's June 8th order was interlocutory.

[19] Indiana Appellate Rule 9(A) requires that a party initiate an appeal by filing a notice of appeal within thirty days after entry of a final judgment is noted on the chronological case summary. A "final judgment" is defined, in part, as a judgment that disposes of all claims as to all parties, or where

> the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties[.]

[20] Ind. Appellate Rule 2(H)(2). The trial court's June 8th order was not a final judgment because issues regarding the medical examination, increased parenting time, professional counseling for the child, and supervised parenting time were still pending and yet to be resolved. Mother's filing of a motion to correct error did not convert the interlocutory order into a final, appealable judgment. The trial court did not use the "magic language" of Indiana Trial Rule 54(B) to convert the order into a final judgment.[5] Mother did not seek and gain permission for a discretionary interlocutory appeal from the trial court and

---

[5] Indiana Trial Rule 54(B) provides in relevant part: "A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment . . . ."

this court. *See* App. R. 14(B). Although Mother could have sought an interlocutory appeal by right of the June 8th order, she failed to timely file her Notice of Appeal to preserve the interlocutory appeal.[6] *See* App. R. 14(A)(1).

[21] The June 8th order became final and appealable when it was reissued by the trial court as part of the court's September 9, 2016 order. Mother's instant appeal is timely.

## II. Child Support Calculation

[22] Mother argues that the trial court erred in calculating Father's child support obligation. Mother specifically asserts that: 1) the trial court erred in calculating Father's weekly gross income; and 2) the trial court erred in crediting Father with ninety-eight overnight visits with the child.

[23] A trial court's calculation of child support is presumptively valid. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to

---

[6] Indiana Appellate Rule 14(A) provides that interlocutory orders "[f]or the payment of money" are appealable by right. This court has held that child support orders are orders for the payment of money within the meaning of App. R. 14(A)(1). *Rowe v. Ind. Dep't of Correction,* 940 N.E.2d 1218, 1220 (Ind. Ct. App. 2011), *trans. denied.* To appeal such an order, the notice of appeal must be filed within thirty days after the notation of the interlocutory order in the chronological case summary. App. R. 14(A)(1). Mother did not file her notice of appeal within the allotted time. However, a claim of error in an interlocutory order, even an interlocutory order which is appealable as of right, is not waived for failure to take an interlocutory appeal but instead may be raised on appeal from the final judgment. *See Bojrab v. Bojrab,* 810 N.E.2d 1008, 1014 (Ind. 2004).

law.  *Id*.  A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court.  *Id*.

## *A. Determination of Weekly Gross Income*

[24]     Mother argues that the trial court erred in determining Father's weekly gross income for purposes of calculating Father's child support obligation.  Indiana Child Support Guideline 3A addresses the definition of weekly gross income for purposes of determining child support and provides:

> *Definition of Weekly Gross Income (Line 1 of Worksheet).*  For purposes of these Guidelines, "weekly gross income" is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon "in-kind" benefits.  Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, inheritance, prizes, and alimony or maintenance received.

At the April 6, 2015 child support hearing, Father testified that he was laid off from his employment on April 15, 2013, that he received unemployment benefits, and that he eventually obtained employment on March 10, 2014. During the hearing, the trial court directed the parties to submit their paystubs

within ten days.  Father complied.[7]  The trial court used Father's 2014 tax return to determine his weekly gross income to be $594.00.

[25]   Mother contends that the 2014 tax return did not accurately reflect Father's income because he "was [not] employed for just over two months of 2014," and he "was laid off on April 15, 2013 and did not return to work until March 10, 2014."  Appellant's Br. p. 20.  Mother also asserts that the tax return "disregards unemployment insurance benefits [Father] received while unemployed as well as overtime [compensation] which [Father] regularly receives."[8]  *Id.*  Mother maintains that, based upon Father's testimony at the April 6, 2015 hearing that he was earning $20.25 per hour, the trial court should have determined his weekly gross income to be $810.00 per week.[9]

[26]   Child Support Guideline 3B provides:  "Income statements of the parents shall be verified with documentation of both current and past income.  Suitable documentation of current earnings includes paystubs, employer statements, or receipts and expenses if self-employed.  Documentation of income may be

---

[7] It appears that Mother's paystubs were admitted into evidence at the April 6, 2015 hearing.  Mother tendered her 2014 tax return to the court on January 8, 2016.

[8] Mother also contends that Father's failure to submit his paystubs "until after the trial court had already received the motion to modify child support could have contributed to the error that the trial court made in failing to use [Father's paystubs] to calculate his child support obligation" and "forced the trial court to rely more heavily on outdated and inaccurate tax documents from when [Father] was unemployed."  Appellant's Br. p. 21.  This argument, however, is untenable because Father would have no reason to submit his paystubs but for filing his motion to modify child support.

[9] The $810.00 per week gross income is derived by multiplying Father's hourly earnings rate ($20.25) by forty hours.

supplemented with copies of tax returns." The Commentary to Guideline 3B cautions the trial court against accepting a "snapshot" verification of the obligor's gross income before examining all the circumstances. The Commentary states: "One pay stub standing alone can be very misleading, as can other forms of documentation." Ind. Child Support Guideline 3B, Commentary 2. The Commentary goes on to suggest that, when in doubt, the trial court should review income tax returns for the last two or three years.

[27] At the April 6, 2015 hearing, the trial court was provided with evidence of Father's current hourly wage ($20.25). Father's proposed child support obligation worksheet, which was entered into evidence, showed weekly gross income of $810.00 for Father and $316.60 for Mother and a recommendation that Father's child support obligation be $77.00 per week. Father testified that he was laid off from his employment on April 15, 2013, and that he received unemployment benefits for "a little while" until he obtained employment on March 10, 2014. Tr., April 6, 2015 Hearing, p. 13. Following the hearing, the trial court was provided with Father's paystubs from January 1 through February 18, 2015, and his 2014 tax return. Father's paystubs showed compensation for regular worktime and overtime.

[28] Although the trial court had before it several documents evidencing Father's income, it determined that Father's weekly gross income should be $594.00

based upon Father's 2014 tax return alone.[10] *See* Appellee's Corrected App. Vol. 2 p. 16, Order on Child Support ("Based off [the 2014 Tax Return for Mr. Verbosky,] the Court calculates his weekly gross income to [be] $594.00."). It is unclear from the trial court's order whether Father's paystubs and his ability to earn overtime compensation were factors in the trial court's determination of his weekly gross income. *See* Child Supp. G. 3A Cmt. 2b. (when court determines it is not appropriate to include irregular income in determination of child support obligation, court should express its reasons). It also is unclear whether the trial court considered Father's unemployment benefits.[11]

[29] We find that the trial court committed error when it determined Father's weekly gross income to be $594.00 based solely on Father's 2014 tax return. *Schaeffer v. Schaeffer*, 717 N.E.2d 915, 917-18 (Ind. Ct. App. 1999) (reversing child support order where trial court improperly relied on husband's past, not current, income). We reverse and remand and order the trial court to recalculate Father's weekly gross income. If, upon remand, the trial court determines that Father's weekly gross income should be $594.00, it should

---

[10] It appears that the trial court arrived at a weekly gross income for Father of $594.00 by taking his adjusted gross income from his 2014 tax return ($30,885.00) and dividing the amount by 52.

[11] The first page of Father's 2014 tax return is missing from Appellant's Appendix.

provide reasons for its determination.[12] *See* Ind. Child Support Rule 3 (deviation from Guidelines requires a written explanation).

### B. Parenting Time Credit

[30] Although we have determined that this matter should be remanded, we address Mother's claim regarding the credit Father received for parenting time because the decision impacts the trial court's ultimate determination of Father's child support obligation.

[31] After Father filed his motion to modify child support and parenting time on January 24, 2014, Mother filed a motion to restrict Father's visitation. In orders dated August 8 and November 12, 2014, the trial court increased Father's parenting time but directed that it be supervised. Father was not awarded overnight parenting time. Nevertheless, in calculating Father's child support obligation, the trial court awarded him parenting time credit for ninety-eight overnight visits because it determined that "under ordinary circumstances[, Father] would [enjoy overnight visitation]." Appellee's Corrected App. Vol. 2 p. 16. After applying the credit for the overnight visitation, the trial court determined Father's child support obligation to be $72.00.

---

[12] Mother also argues that the trial court erred in calculating the percentage share of the parties' weekly adjusted income. We agree and on remand direct the trial court to correct the calculation.

[32] Mother argues that Father should not have been credited with any overnight visitation because he was not exercising any overnights with the child. Father concedes that he was not enjoying any overnight visitation with the child. He argues, however, that the trial court correctly awarded him this parenting time credit because: 1) Mother invited the error she raises when she filed the motion to restrict Father's visitation with the child, 2) in awarding the credit for the overnights, the trial court "attempted to balance the rights of [Father] to visit with the child, including overnight parenting time," and 3) the loss of overnight visits was not the result of any conduct on Father's part. Appellee's Br. p. 18.

[33] Child Support Guideline 6 provides that "[a] credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." The Guidelines contain a formula for calculating parenting time credit based upon the total number of "overnights" per year that the noncustodial parent spends with the children. Child Supp. G. 6 Table PT. In explaining the term "overnight," the commentary to the guidelines provides that

> [a]n overnight will not always translate into a twenty-four hour block of time with all of the attendant costs and responsibilities. It should include, however, the costs of feeding and transporting the child, attending to school work and the like. Merely providing a child with a place to sleep in order to obtain a credit is prohibited.

Child Supp. G. 6 Cmt. As our supreme court provided in *Young*,

> [w]e take the gist of this comment to be that not all visits in which a child stays overnight may qualify for the parenting time

credit. Still, neither this comment nor any other portion of the guidelines suggests that a visit may qualify as an overnight if the child does not physically stay overnight with the noncustodial parent. If the able and careful drafters of the guidelines had intended for non-overnight visits in which the noncustodial parent provides the children with transportation from school and to and from their activities, feeds them, and does homework with them to qualify for parenting time credit, the guidelines could have easily included those visits in the formula.

*Young*, 891 N.E.2d at 1048. The rationale behind the parenting time credit is that overnight visits with the noncustodial parent may alter some of the financial burden of the custodial and noncustodial parents in caring for the children. *Id*. The number of visits a noncustodial parent receives parenting time credit for cannot exceed the number of visits in which the children physically stay overnight with the parent. *Id*.

> On the other hand, if after calculating the noncustodial parent's child support obligation the court concludes that in a particular case application of the guideline amount would be unreasonable, unjust, or inappropriate, the court may deviate from that amount by entering a written finding articulating the factual circumstances supporting that conclusion.

*Id*.; *see also* Child Supp. R. 3. However, the finding required "need not be as formal as Findings of Fact and Conclusions of Law; the finding need only articulate the judge's reasoning." Child Supp. G. 1 Cmt.

[34] Here, the trial court's orders gradually increased Father's parenting time; however, at the time the court issued its September 9, 2016 order that reissued

the June 8th child support order, Father still was not enjoying overnight visits with the child. Nevertheless, the trial court credited Father with ninety-eight overnights of parenting time because "under ordinary circumstances[, Father] would [enjoy overnight visits]." Appellee's Corrected App. Vol. 2 p. 16.

[35] Per our supreme court in *Young*, Father was not entitled to parenting time credit for overnight visitation that he was not enjoying. *Young*, 891 N.E.2d at 1048. The trial court's order does not sufficiently explain why it credited Father with overnight visitation he was not enjoying. The trial court may have determined that Father was entitled to a deviation from his child support obligation for non-overnight visits. However, the trial court did not find that application of the guideline amount of child support would be unjust, and it did not provide written findings articulating factual circumstances to support such a conclusion.

[36] We find that the trial court committed error in awarding the credit. We remand this matter for the trial court to modify and correct the child support worksheet to reflect Father's correct overnights. If, after recalculating Father's child support obligation, the trial court finds that the presumptive child support obligation is unjust and Father is entitled to a deviation, the reason for the deviation must be supported by a written finding.

### III. Appellate Fees

[37] Mother asks this court to award her appellate fees under Indiana Appellate Rule 66(E) "due to Father's multiple bad faith misrepresentations and application of [caselaw] and of the record as cited herein." Appellant's Reply Br. p. 15.

Indiana Appellate Rule 66(E) provides that we "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execution."

[38] Bad faith on appeal may be "substantive" or "procedural." *Manous v. Manousogianakis,* 824 N.E.2d 756, 768 (Ind. Ct. App. 2005). Mother appears to argue that Father has committed procedural bad faith. There is procedural bad faith when a party flagrantly disregards the form and content requirements of our rules, omits and misstates relevant facts appearing in the record, and files briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Manous,* 824 N.E.2d at 768. Mother, however, fails to develop her argument regarding Father's alleged procedural bad faith. Her claim fails.[13]

## Conclusion

[39] For the foregoing reasons, we reverse and remand for the trial court to recalculate Father's weekly gross income, and to modify and correct the child support worksheet to reflect Father's correct overnights. If, after recalculation, the trial court determines that Father's weekly gross income should be $594.00,

---

[13] By separate orders issued contemporaneously with this opinion, we hereby grant Mother's Motion for Leave to File Amended Appendix 1 and Motion for Leave to File Amended Appendices I, Supplemental Confidential IV and Supplemental V. We deny Father's request to strike the documents from Mother's addendum because it does not appear that Mother tendered or filed an addendum in this case.

and/or that Father is entitled to a deviation regarding his child support obligation because imposing the presumptive child support would be unjust, it must make a written finding that sets forth the reason for the deviation. We deny Mother's request for appellate fees.

[40] Reversed and remanded.

Kirsch, J., concurs.

Robb, J., dissents with opinion.

| | |
|---|---|
| Stephanie Leffler,<br>*Appellant-Respondent,*<br><br>v.<br><br>Dustin Verbosky,<br>*Appellee-Petitioner.* | Court of Appeals Case No.<br>52A02-1610-JP-2275 |

**Robb, Judge, dissenting.**

[41]     I respectfully disagree with the majority's conclusion that Mother's appeal is timely, and therefore I dissent.

[42]     Mother preemptively raises the issue of the timeliness of her appeal. When Mother attempted to appeal the trial court's June 8th child support order in 2016, the motions panel of this court determined the order was interlocutory and dismissed the appeal without prejudice. Mother then went back to the trial court and requested a final order on the issue of child support. The trial court essentially re-issued its June 8th order but titled it "Final Order on Child Support." Appellant's Appendix at 93 ("The Court finds that the Final Order on Support is the same as the Order on Child Support issued on June 8, 2015 . . . ."). It is from this "Final Order" that Mother now appeals.

[43]     The majority states the parties' arguments regarding timeliness as follows:

Mother maintains that the June 8th order, when it originally was issued, was not a final judgment because issues involving parenting time and counselor recommendations remained unresolved, and the trial court did not certify the order as final and appealable. Father revives his previous argument that the order was final and appealable because Mother filed a motion to correct error and the motion was deemed denied on August 9, 2015, after the trial court did not set the matter for a hearing or rule on the motion within forty-five days.

Slip op. at ¶ 16. The majority agrees with the motions panel and Mother that the June 8th order was interlocutory because certain issues remained pending. *See id.* at ¶ 19. It is my position that no issues of import remained live at the time of the June 8th order, however. Father filed his petition to modify child support in January 2014. It is this motion that the trial court ultimately ruled on in June 2015 and again in September 2016. As the trial court noted in its June 8th order, "[m]uch has happened between the date [Father] filed his petition and the current time and it seems that the child support issue has gotten lost in the process." Appellant's App. at 45. The flurry of motions and cross-motions, responses and replies to responses to which the trial court refers include:

- January 2014: Father filed a petition to modify his parenting time. Mother met that motion with an August 2014 motion to restrict Father's parenting time. On August 8, 2014, the trial court ordered Father's parenting time to be supervised, and in November 2014, the trial court increased Father's supervised parenting time. Nothing further occurred

with respect to parenting time until November 2015, when Father filed a petition to increase parenting time.

- January 2014: Father filed a petition for contempt against Mother. In November 2014, the trial court found "it to be a close case" but determined Mother was not in contempt of court. Appellee's Appendix at 7.

- January 2015: Mother filed a motion for Father to undergo a Trial Rule 35 medical examination. Father filed a response, and Mother replied, asking the motion be held in abeyance pending a recommendation from the child's counselor. The trial court ordered the motion be held in abeyance. At an April 2015 hearing, Mother's counsel noted "we specifically stated at the last hearing we did not anticipate to be heard" on that motion. Transcript at 8.[14]

- January 2015: Mother made a motion for the child to receive professional counseling. In a separate order also dated June 8th, the trial court appointed Dr. Randall Krupsaw to begin counseling the child.

- January 2015: Mother made a motion for professionally supervised visitation for a period of not less than three months. In Father's response to Mother's motion, he indicated he "understood that the court has already rejected this request by [Mother]." Appellant's Appendix in

---

[14] The child's counselor filed his report on October 15, 2015, and did not make a recommendation regarding Mother's motion, and in fact, did not even mention a medical examination for Father in any way. Mother has apparently not pursued this motion since filing it and then requesting it be held in abeyance.

Cause No. JP-424 at 35. Mother filed a reply to Father's response and did not challenge Father's understanding on this point.

[44] Thus, when the trial court held a hearing on April 6, 2015, the only "live" issues were Father's petition to modify child support and appointment of a counselor pursuant to Mother's motion for the child to receive counseling. The trial court issued two orders on June 8, 2015: one appointing Dr. Krupsaw as the child's counselor and the other modifying Father's child support, and no further proceedings or status hearings were set at that time. The trial court's orders of June 8 therefore decided all issues pending before it. *See* Ind. Appellate Rule 2(H)(1) ("A judgement is a final judgment if it disposes of all claims as to all parties . . . ."). For this reason, I believe the June 8th order regarding child support was a final judgment on its own and needed no "magic language" to make it so.

[45] In addition, it appears Mother believed the trial court's order was a final judgment. I acknowledge we do not exalt form over substance, and contrary to Father's assertion, the mere fact that Mother styled her June 25, 2015 motion responding to the trial court's June 8th order a "Motion to Correct Error" would not turn an otherwise interlocutory order into a final judgment. *See Snyder v. Snyder*, 62 N.E.3d 455, 458 (Ind. Ct. App. 2016) (noting motions to correct error are only proper after the entry of a final judgment; any such motion filed prior to the entry of a final judgment must be viewed as a motion to reconsider). However, the parties' understanding of the procedural posture of their own case is a powerful consideration. When the trial court appointed a counselor and

ruled on Father's petition to modify support on June 8, 2015, the trial court had no further motions to rule on until and unless one of the parties placed an issue before it, by, for instance, moving to alter Father's parenting time from that ordered in November 2014, moving to reinstate the Trial Rule 35 motion, or making a motion on an entirely new issue. Moreover, the trial court also clearly believed the child support issue had been settled with finality. When the parties appeared for a hearing in January 2016 on new motions filed since the June 8th order, the trial court noted the child support issue decided by that order was "a dead issue." Tr. at 59.

[46] I must also note the inherent unfairness demonstrated by the result in this case: even if the June 8th order was not a final judgment, it was an interlocutory order appealable by right. *See* slip op. at ¶ 20 n.6 (citing App. R. 14(A)(1)). Allowing Mother to wait until September of 2016 to appeal a June 2015 order issued on a January 2014 motion puts Father in an untenable position: relying on the June 8th order, he began paying a lower amount of child support at that time and now, two years after that order, he may ultimately be ordered to pay a higher amount retroactive to three and one-half years ago.

[47] Because I believe the June 8th order was a final judgment from which Mother filed a timely motion to correct error, I would hold Mother was obligated to file a Notice of Appeal within thirty days after her motion was deemed denied by operation of Trial Rule 53.3(A). The motion was deemed denied in August 2015, and Mother did not file a timely Notice of Appeal from that denial. *See* App. R. 2(H)(4). Regardless of how I view the merits of the trial court's order

modifying Father's child support, Mother forfeited her right to appeal the trial court's June 8th order when she did not do so in 2015 and none of the procedural machinations she has engaged in since should revive that right.[15]

---

[15] I must also note the inherent unfairness demonstrated by the result in this case: even if the June 8th order was not a final judgment, it was an interlocutory order appealable by right. *See* slip op. at ¶ 20 n.6 (citing App. R. 14(A)(1)). Allowing Mother to wait until September of 2016 to appeal a June 2015 order issued on a January 2014 motion puts Father in an untenable position: relying on the June 8th order, he began paying a lower amount of child support at that time and now, two years after that order, he may ultimately be ordered to pay a higher amount retroactive to three and one-half years ago. Although *Bojrab v. Bojrab*, cited by the majority, *see id.*, does hold that a claim of error in an interlocutory order is not waived by failure to take an interlocutory appeal and may be raised in a direct appeal from the final judgment, I note that *Bojrab* was decided in the context of an interlocutory *provisional* order prior to the entry of a dissolution decree and not in the context of a post-dissolution, or, as in this case, a post-establishment of paternity order.