

I N   T H E

# Court of Appeals of Indiana

Shawtai Sandifar, as Parent and Natural Guardian of L.D.I., a Minor,

*Appellant-Plaintiff*

v.

Jeremy Patterson, Jathan Patterson, and the Indiana Department of Child Services,

*Appellees-Defendants*



FILED

Mar 12 2025, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

March 12, 2025

Court of Appeals Case No.
24A-CT-1871

Appeal from the Delaware Circuit Court

The Honorable Marianne L. Vorhees, Judge

Trial Court Cause No.
18C01-1908-CT-88

---

**Opinion by Judge Tavitas**
Judges May and DeBoer concur.

**Tavitas, Judge.**

## Case Summary

[1] In March 2018, the Indiana Department of Child Services ("DCS") removed L.D.I. ("Child") from the care of his mother, Shawtai Sandifar ("Mother"), and placed him in foster care with Jeremy Patterson ("Jeremy") and Jathan Patterson ("Jathan") (collectively "the Pattersons"). While in foster care, the Child was subject to repeated sexual abuse by one or both of the Pattersons.[1] Mother ultimately brought suit against DCS alleging that it was negligent for failing to: (1) remove the Child from the Pattersons' care; (2) respond to information indicating that the Pattersons were sexually abusing the Child; (3) train its employees on recognizing the signs of sexual abuse; and (4) consider Mother's requests that the Child be placed in counseling that would have revealed the sexual abuse. DCS moved to dismiss and argued that it was immune from such claims under the law-enforcement immunity provision of the Indiana Tort Claims Act ("ITCA"). The trial court agreed and granted DCS's motion to dismiss.

[2] Mother appeals and claims that: (1) DCS has a duty to protect foster children by investigating and discovering sexual abuse by foster parents; and (2) DCS has not shown, based on the facts alleged in Mother's complaint, that it is

---

[1] Although Mother's complaint does not explicitly allege which of the Pattersons abused the Child, Jathan was later charged with several crimes related to this abuse and eventually pleaded guilty to two counts of child molesting, Level 4 felonies. *See State v. Patterson*, No. 18C04-1901-F4-01 (chronological case summary entry for June 25, 2020). Jeremy, however, does not appear to have been criminally charged.

immune under the law-enforcement immunity provision of the ITCA and that the trial court, therefore, should not have granted DCS's motion to dismiss. DCS argues that it is immune from suit under the law-enforcement immunity provision of the ITCA. DCS also argues, for the first time on appeal, that the statutes setting forth its responsibilities to foster children do not give rise to a private cause of action.

Based on the facts alleged in Mother's complaint, we cannot find at this stage in the proceedings that DCS is immune under the law-enforcement immunity provision of the ITCA. Accordingly, we reverse and remand.

## Issues

The parties present three issues, one of which we find to be dispositive: whether, based on the facts alleged in Mother's complaint, that DCS has shown that it is entitled to immunity under the law enforcement immunity provision of the ITCA.

## Facts and Procedural History

Since this case was decided on a motion to dismiss, we accept the facts alleged in the complaint as true. *Bellwether Props., LLC v. Duke Energy Ind., Inc.*, 87 N.E.3d 462, 466 (Ind. 2017). The facts as alleged in Mother's complaint reveal that, on March 11, 2018, DCS removed the then eight-year-old Child from Mother's care and initiated CHINS proceedings. One week later, DCS placed the Child in foster care with the Pattersons. While the Child was in the Pattersons' care, the Child began to engage in behaviors that were indicative of

sexual abuse. Mother requested that the Child receive counseling to address these issues, but DCS did not act on Mother's requests. During a supervised parenting session with Mother, the Child disclosed the sexual abuse to Mother and a DCS service provider. On December 14, 2018, DCS removed the Child from the Pattersons' care.

[6] On August 1, 2019, the Child's guardian ad litem ("GAL") filed a complaint against the Pattersons claiming negligence and intentional infliction of emotional distress and seeking compensatory and punitive damages. After the CHINS case was dismissed, Mother was substituted as the real party in interest.

[7] On March 30, 2020, Mother filed an amended complaint adding DCS as a defendant and alleged that DCS was negligent for: (1) failing to remove the Child from the Pattersons despite DCS having actual or constructive knowledge of the issues in the Patterson's home; (2) failing to respond to information, including the Child's behavior, that suggested that either one or both of the Pattersons were molesting the Child and exposing him to pornography; (3) failing to observe and respond to the Child's behavior, which was typically associated with sexual abuse; (4) failing to properly train its agents and employees on identifying the signs of child molestation; and (5) failing to heed Mother's repeated requests to place the Child in counseling, which would have revealed the molestation earlier.

[8] On September 30, 2020, DCS moved to dismiss Mother's complaint under Indiana Trial Rule 12(B)(6) and asserted immunity under the law-enforcement

immunity provision of the ITCA and under common law.  Mother filed a response arguing that law-enforcement immunity under the ITCA was inapplicable because DCS was not engaged in law enforcement when it failed to act.[2]  Following a remote hearing, the trial court issued an order on February 11, 2021, in which it granted DCS's motion to dismiss based on the law-enforcement immunity provision of the ITCA.[3]

[9] On February 19, 2021, Mother filed a second amended complaint.  The relevant portions of Mother's second amended complaint state:

> 19.  The State of Indiana, through its Department of Child Services (collectively, "the State defendants") and agents and employees of the State defendants acting within the course and scope of their employment and agency with the State defendants, acted negligently as follows:
>
>> (a)  Failed to properly screen the Patterson defendants as foster parents;
>>
>> (b)  Failed to properly supervise the Patterson defendants after placing [the Child] and other children with them;
>>
>> (c)  Failed to respond to information, including acting out behavior by [the Child] that indicated that one or more of the Patterson defendants were serially molesting [the Child] and/or other children in their care and exposing those children to pornography;

---

[2] Mother also argued in her response that DCS was liable under a theory of *respondeat superior*.

[3] The trial court also found that Mother did not raise a claim of *respondeat superior* in her complaint.

(d) Failed to observe and respond to troublesome behavior by [the Child] that was obviously the "acting out" classically associated with child sexual molestation;

(e) Failed to train its agents and employees how to identify the signs of molestation of children;

(f) Failed to respect Mother's repeated requests that [the Child] be placed in counseling as a result of his acting out, when such placement would have revealed the molestation;

(g) Failed to remove [the Child] from the care of the Patterson defendants despite actual or constructive knowledge of other problems in the Patterson defendants' home;

(h) Engaged in the acts and omissions of the Patterson Defendants as described in paragraphs 14-17, above;[4] and

(i) Failed to follow many of its own internal procedures that would have protected [the Child] if followed.

Appellant's App. Vol. II p. 74-75. Mother also filed a motion to correct error and a petition to certify for interlocutory appeal the trial court's February 11 order dismissing the claims against DCS. On April 5, 2021, the trial court issued an order denying Mother's motion to correct error but granting her motion to certify the February 11 order for interlocutory appeal. This Court, however, denied Mother's petition to accept interlocutory jurisdiction.

---

[4] This allegation appears to refer to Mother's claim of *respondeat superior*, which Mother abandoned on appeal.

On July 19, 2021, DCS filed a second motion to dismiss Mother's amended complaint under Trial Rule 12(B)(6), again claiming that, under the law-enforcement immunity provision of the ITCA, it was immune from Mother's claims. On October 28, 2021, the trial court again agreed with DCS and granted the motion to dismiss.[5] This appeal ensued.[6]

## Discussion and Decision

### I. Standard of Review

Mother appeals the trial court's grant of DCS's motion to dismiss under Trial 12(B).

> Indiana Trial Rule 12(B)(6) allows a party to request dismissal for "[f]ailure to state a claim upon which relief can be granted . . . ." A motion to dismiss under Trial Rule 12(B)(6) tests the legal sufficiency of the [plaintiff's] claim, not the facts supporting it. Dismissals are improper under Trial Rule 12(B)(6) unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. We review a Trial Rule 12(B)(6) dismissal de novo, giving no deference to the trial court's decision. In reviewing the complaint, we take the alleged facts to be true and consider the allegations in the light most favorable to the nonmoving party, drawing every reasonable inference in that party's favor. The dismissal of a complaint

---

[5] After the trial court granted DCS's motion to dismiss, Mother filed a motion to correct error. The trial court denied Mother's motion, noting that its order dismissing the claims against DCS was not a final appealable order due to the outstanding claims against the Pattersons. On June 3, 2022, Mother was granted a default judgment regarding her claims against Jathan Patterson. Mother then entered into a settlement agreement regarding her claims against Jeremy Patterson, and the claims against Jeremy were dismissed on July 8, 2024.

[6] We held oral argument in this case on February 18, 2025, at the Court of Appeals Courtroom in Indianapolis. We thank counsel for the quality of their oral advocacy.

> under Trial Rule 12(B)(6) is seldom appropriate because such dismissals undermine the policy of deciding causes of action on their merits.

*Hipps v. Biglari Holdings, Inc.*, 136 N.E.3d 629, 635-36 (Ind. Ct. App. 2019) (citations and some internal quotations omitted), *trans. denied*.

[12] Although the parties present three issues on appeal, we find one issue to be dispositive: whether the trial court erred as a matter of law by determining that, based on the facts alleged in Mother's complaint, DCS demonstrated that it is immune from suit under the ITCA.

## II. Immunity under the ITCA

### A. Common Law Immunity

[13] "'Immunity assumes negligence but denies liability.'" *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 136 (Ind. 2013) (quoting *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 5 (Ind. 2002)). Under the common-law doctrine of sovereign immunity, the State could not be sued in its own courts. *See Ladra v. State*, 177 N.E.3d 412, 416 (Ind. 2021). "The first major effort to limit the doctrine of sovereign immunity came not from the legislature but, rather, from the judicial branch." *Id.* Two decisions from this Court—*Brinkman v. City of Indianapolis*, 231 N.E.2d 169 (Ind. App. 1967), and *Klepinger v. Bd. of Comm'rs of Miami Cnty.*, 239 N.E.2d 170 (Ind. App. 1968)—abolished the common-law doctrine of sovereign immunity for municipal and county governments, respectively. *Landra*, 177 N.E.3d at 417.

[14] Then, in 1972, our Supreme Court abolished the doctrine of sovereign immunity statewide. *Id*. (citing *Campbell v. State*, 284 N.E.2d 733 (Ind. 1972)). The rule in *Campbell* was that "with certain exceptions, government entities were liable for 'a breach of duty owed to a private individual.'" *Id*. (quoting *Campbell*, 284 N.E.2d at 737).

### B. The Indiana Tort Claims Act ("ITCA")

[15] In response to *Campbell*, the General Assembly enacted the ITCA in 1974. *Landra*, 177 N.E.3d at 418. The ITCA "codified the common-law rule of government liability while granting immunity only in specific circumstances." *Id*. "Whether the ITCA imparts immunity to a governmental entity is a question of law for the court to decide." *Schon v. Frantz*, 156 N.E.3d 692, 699 (Ind. Ct. App. 2020) (quoting *Lee v. Bartholomew Consol. Sch. Corp.*, 75 N.E.3d 518, 525 (Ind. Ct. App. 2017)). "The party seeking immunity bears the burden of proving that its conduct falls within the provisions of the ITCA." *Id.*

[16] Because the ITCA is in derogation of the common law, it must be strictly construed against limitations on a plaintiff's right to bring suit. *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013). "[G]overnmental liability for tortious conduct is the rule while immunity is the exception." *Ladra*, 177 N.E.3d at 416. "'The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.'" *Savieo v. City of New Haven*, 824 N.E.2d 1272,

1275 (Ind. Ct. App. 2005) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003)), *trans. denied*.

[17] At issue here is the law-enforcement immunity provision of the ITCA, which provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:
>
> * * * * *
>
> (8) The adoption and enforcement of or failure to adopt or enforce:
>
>> (A) a law (including rules and regulations); or
>>
>> (B) in the case of a public school or charter school, a policy;
>
> unless the act of enforcement constitutes false arrest or false imprisonment.

Ind. Code § 34-13-3-3(a)(8) ("Section 3(a)(8)").

[18] The immunity provided by Section 3(a)(8) "extends well beyond 'traditional law enforcement activities such as the arrest or pursuit of suspects by police.'" *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind. 1994) (quoting *Quakenbush v. Lackey*, 622 N.E.2d 1284 1287 n.3 (Ind. 1993)). Indeed, for purposes of Section 3(a)(8), "enforcement" has been more broadly defined as "'those activities in which a government entity or its employees compel or attempt to compel the obedience of *another* to laws, rules or regulations, or

sanction or attempt to sanction a violation thereof." *Savieo*, 824 N.E.2d at 1275 (emphasis added) (quoting *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002), *trans. denied*); *see also Mullin*, 639 N.E.2d at 283 (holding that "the scope of 'enforcement' is limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof.").[7]

### C. The Parties' Arguments Based on Section 3(a)(8)

[19] Mother argues that DCS has not shown that it is entitled to immunity from suit under Section 3(a)(8) of the ITCA because her claims against DCS fall into two categories: (1) failing to properly investigate and discover the abuse inflicted upon the Child; and (2) failing to remove the Child from the Pattersons when it knew (or should have known) about the abuse. Mother argues that none of her complaints involve DCS compelling or attempting to compel the obedience of *another* to laws, rules, or regulations. Instead, she insists, her claims against DCS are based on DCS's own "institutional" failures. Appellant's Br. p. 21. That is, it is DCS's failure to follow the relevant statutes and regulations—not DCS's failure to compel someone else to follow the relevant laws and regulations—that underlie Mother's claims against DCS.

---

[7] *See St. Joseph County Police Dep't v. Shumaker*, 812 N.E.2d 1143 (Ind. Ct. App. 2004), for a discussion of the evolution of the law-enforcement exception, culminating in the definition of "enforcement" announced in *Mullin.*

[20] DCS notes that it has the statutory power to screen foster parents and remove a child from a foster home upon determining that the child is subject to abuse or neglect. *See* I.C. §§ 31-27-4-10, 31-27-4-32(1). DCS argues that Mother's complaint alleges that DCS was negligent for failing to exercise these statutory powers and failing to sanction a violation of the law—Jathan Patterson's abuse of the Child.[8] Thus, DCS argues that Mother's claims are based not merely on the failure to abide by the relevant statutes but are instead based on DCS's failure to enforce or apply the statutes against others. Accordingly, DCS argues that it is protected by Section 3(a)(8) immunity.

### D. DCS has not shown that it is entitled to immunity based on the facts alleged in Mother's complaint.

[21] To the extent that Mother's allegations could be construed as claiming that DCS failed to compel the obedience of another to the law, DCS would be immune from such claims. But on review of a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(6), we construe the allegations in the light most favorable to the non-moving party, which here is Mother. *Hipps*, 136 N.E.3d at 636. Construing Mother's allegations in the light most favorable to her, we conclude that the complaint does not allege that DCS compelled or failed to compel the obedience of another to the law. Instead, the complaint

---

[8] In its Appellee's Brief, DCS argues that Mother's claims are based on its alleged failure to enforce the law vis-à-vis the Pattersons. At oral argument, however, DCS shifted gears slightly and argued that the person against whom it allegedly failed to enforce the law was the Child.

refers to DCS's own failures, and DCS is not immune from such claims under Section 3(a)(8).

[22] We find support for our conclusion in *Hopkins v. Indianapolis Public Schools*, 183 N.E.3d 308 (Ind. Ct. App. 2022), *trans. denied*. In that case, a seven-year-old child was at school on his second day of first grade. The child had a blue tag on his book bag to identify him as a child who was to ride the bus home. When the child lined up for the bus, however, a teacher removed him from the bus line and placed him in the group of students who walked home. The confused child eventually walked a mile in the wrong direction, was approached by a vagrant in an alley, chased by dogs, fell, and crossed a busy street during rush hour. Fortunately, a stranger found the child and called the school and the police to inform them of the child's whereabouts. The stranger then took the child to her home, where she found the child's mother on Facebook and informed her of what had happened. The parents, understandably outraged by this turn of events, filed a negligence claim against the school corporation. The school corporation moved for summary judgment in which it alleged it was immune under several provisions of the ITCA. The trial court granted summary judgment, and the parents appealed.

[23] On appeal, a panel of this court reversed. The Court noted that the school corporation owed the common-law duty of reasonable care to the students in its care. *Id.* at 313. The school corporation, however, claimed that it was immune under Section 3(a)(8) because it failed to enforce a school policy vis-à-vis the child. This Court disagreed and held:

> [A] school may not claim immunity when sued regarding its own compliance, or failure to comply, with laws and regulations or a school policy. Parents do not allege that the School harmed [the child] by failing to compel his obedience to its dismissal procedures, but rather that the School itself failed to properly follow the procedures that were meant to provide for their son's safety and well-being. The School's attempt to recast the Parents' negligence claim as one involving the enforcement of a school policy "as to how to facilitate student transportation upon dismissal" is unpersuasive. Accordingly, we conclude that "enforcement" immunity does not protect the School's actions here and that the trial court erred in entering summary judgment for the School on that basis.

*Id*. at 315 (emphasis added) (record citation and footnote omitted).

[24] The same is true here. Mother does not argue that DCS harmed Child by compelling or failing to compel the Pattersons or anyone else to obey the law. Instead, her allegations of negligence involve DCS's own failures to do what it should have done under the circumstances. Like the School in *Hopkins*, DCS's attempt to recast Mother's negligence claims as enforcement of the law against the Pattersons or the Child are unpersuasive. At this stage in the proceedings, considering only the facts alleged in the complaint, and construing Mother's claims in the light most favorable to her as the non-moving party, we conclude that DCS has not shown that Section 3(a)(8)'s law-enforcement immunity shields it from Mother's claims.

[25] This case is, therefore, distinguishable from cases in which our courts have found the governmental actor to be immune from suit under Section 3(a)(8). *See, e.g.*, *Davis v. Animal Control–City of Evansville*, 948 N.E.2d 1161 (Ind. 2011)

(holding that city was immune under Section 3(a)(8) from a negligence claim brought by the parents of a small child who was attacked by his neighbor's dog because the claim was based on the city's failure to enforce the animal control ordinances against the neighbor); *Savieo v. City of New Haven*, 824 N.E.2d 1272 (Ind. Ct. App. 2005) (holding that city was immune under Section 3(a)(8) from claim based on law enforcement officers' decision not to detain mentally ill man who subsequently shot himself because the essence of the complaint was the failure of the officers to compel the obedience of the man to the law), *trans. denied*; *St. Joseph Cnty. Police Dep't v. Shumaker*, 812 N.E.2d 1143 (Ind. Ct. App. 2004) (holding that sheriff's department was not immune from negligence claim arising from department's failure to compel an inmate to comply with the law by releasing the inmate on bond despite a court order denying bond); *Linden v. Health Care 2000, Inc.*, 809 N.E.2d 929 (Ind. Ct. App. 2004) (holding that Department of Insurance ("DOI") was immune under Section 3(a)(8) from class action suit because the suit was based on the DOI's failure to shut down health care company operating without certification from the DOI), *trans. denied*.

[26] In contrast to all of these cases, Mother's allegations here, construed in the light most favorable to her, do not claim that DCS failed to compel another's obedience to the police powers of the state, but that DCS itself failed to do what it should have done. Section 3(a)(8) does not provide immunity from such claims. *See Hopkins*, 183 N.E.3d at 313. The trial court erred in concluding otherwise.

### III. The remaining issues should be resolved on remand.

[27] As noted, each of the parties presents one other issue on appeal. Mother claims that DCS owes a duty to protect children in its care from abuse, and DCS argues that the statutes Mother relies on to create this duty do not create a private cause of action. Below, DCS made no argument that it had no duty to protect children in its care. To the contrary, DCS argued that the duty issue was "irrelevant given Defendant DCS' argument that it is entitled to statutory immunity as a matter of law under [Section 3(a)(8)]." Appellant's App. Vol. II pp. 157-58; *see also F.D.*, 1 N.E.3d at 136 (noting that immunity assumes negligence).

[28] The same is true for DCS's argument that the statutes Mother cites do not raise a private cause of action. Neither party presented this issue to the trial court. Although we might have discretion to address these issues,[9] we opt to remand this cause to the trial court so that these issues may first be fully addressed by the parties and the trial court in the first instance.

## Conclusion

[29] Considering only the facts alleged in Mother's complaint, and construing Mother's claims in the light most favorable to her, we conclude that DCS has not established that it is entitled to immunity from such claims under the law-

---

[9] *See Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 312 (Ind. Ct. App. 2015) (noting that, although an appellant may generally not present an argument that was not presented to the trial court, this limitation does not generally apply to an appellee who seeks to affirm the trial court's judgment).

enforcement immunity provision of the ITCA. Accordingly, the trial court erred by granting DCS's motion to dismiss. The remaining issues are remanded to the trial court. We, therefore, reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

May, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Jonathon B. Noyes
William E. Winingham
Kayla Carmosino
Wilson Kehoe & Winingham, LLC
Indianapolis, Indiana

Ralph E. Dowling
Muncie, Indiana

ATTORNEYS FOR APPELLEES

Theodore E. Rokita
Attorney General of Indiana

David A. Arthur
John M. Vastag
Deputy Attorneys General
Indianapolis, Indiana